## OKLAHOMA PUB. CO. v. TUCKER.

No. 16765—Opinion Filed April 5, 1927.

(Syllabus.)

1. **Libel and Slander—Words Libelous Per Se—Pleading and Proof of Special Damages Unnecessary.**

Where the words employed in an alleged libelous article, taken in their most natural and obvious sense, are defamatory per se, the person concerning whom they are published is entitled to recover without alleging or proving special damages.

2. **Same—Libelous Publication Defined.**

Language used in a newspaper article which, when given its ordinary, natural, and obvious meaning, exposes the person concerning whom it is used to public hatred, contempt, ridicule. or obloquy, or which tends to deprive him of public confidence or to injure him in his occupation, is libelous and actionable.

3. **Same—Libelous Publication Concerning Officers.**

The general rule is that a publication which charges a public official with neglect of official duty or incompetency in his office, or malfeasance in his office, is libelous per se.

4. **Same—Defense of Privileged Communication—Falsity of Facts Commented On.**

In an action for libel by a public official,

when the defense of privileged communication on matters of public interest is presented by the issues, the plaintiff may overcome the privilege by proof that the facts commented upon were false.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court. Ottawa County; J. J. Smith, Judge.

Action by J. C. Tucker against the Oklahoma Publishing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Cottingham, McInnis & Green, A. C. Wallace, F. G. Anderson, and M. M. Gibbens, for plaintiff in error.

Frank Nesbitt, for defendant in error.

Opinion by PINKHAM, C. The defendant in error. J. C. Tucker, instituted this action as plaintiff in the district court of Ottawa county against the Oklahoma Publishing Company by the filing of his petition wherein the plaintiff alleges, in substance, that he is a resident and citizen of the town of Afton, Okla., and that the defendant is a corporation and doing business under the laws of the state of Oklahoma and engaged in composing, publishing, and circulating a certain newspaper called the Daily Oklahoman, which newspaper is and was of general circulation in the town of Afton and throughout Ottawa county; that on Sunday, June 29, 1924, the defendant corporation published in the issue of the Daily Oklahoman of that date a certain article composed by one T. G. Reardon, which said article is set out in full in plaintiff's petition.

The article referred to and as pleaded by plaintiff in his petition is in part as follows:

"During the latter part of my trip I drove into Afton and was immediately arrested for a small traffic offense. Upon presenting my case before the municipal judge I was given no consideration whatever. As a matter of fact I was treated rather discourteous, and you may be assured that I was fined. In the court, before us, the city marshal and judge put their part of the fee into their pockets and the marshal immediately departed to catch another tourist. In this town I investigated the situation very closely, and ascertained that tourists are watched very closely, but the local and neighboring citizens are in no way molested.

"Upon making this investigation I learned that only a few days before a man with his wife and children were driving through to some point in Missouri and he was arrested by the same city marshal for some small offense. The municipal judge found him guilty and assessed him a fine. This man was poor, his car was nearly worn out Ford, and he was trying to get to a point where he could get work. He did not have enough money to pay his fine and the judge then imposed a jail sentence. The citizens, however, would not stand for this rank injustice and the victim was eventually turned loose."

The petition further alleges that each and all of the allegations made and contained in the foregoing portion of said article were and are false and untrue, and were to the composer and publisher thereof known to be untrue and false, and were published out of malice with the intention on the part of said defendant to injure the good name, fame, and reputation of the plaintiff.

The plaintiff further alleges that said portion of said article and the words and statements therein, when taken in their usual and ordinary meaning, constitute a libel per se, in that the same charged the plaintiff. J. C. Tucker, with gross partiality in office, oppression in office, and corruption in office, and would, if true, subject the plaintiff to removal from office under the provisions of the statutes of this state, and that said allegations in said article contained, by their usual and ordinary meaning, further charge the plaintiff with a criminal offense, in that they allege that the plaintiff pocketed, or retained, the fee at said time and place in question, collected from the said T. G. Reardon, instead of accounting for and paying the same over to the proper officials of the town of Afton; and for the further reason that said allegations charge the plaintiff with willful maladministration and malfeasance in office; that by reason of the matters and things pleaded and stated by plaintiff in his petition he has been damaged in the sum of $10,000, for which he prays judgment.

To this petition of the plaintiff, the defendant, Oklahoma Publishing Company, filed its answer, admitting its corporate existence, and after so doing denies all of the other allegations in plaintiff's petition alleged, except such as are by said defendant specifically admitted. The defendant admits that on the 29th day of June, 1924, it printed and published the article in words and figures as set out in plaintiff's petition. The defendant denies that such article was published with any malice upon the part of said defendant or anyone in its behalf, and denies that such article is false, but asserts the same to be true as said defendant at said time verily believed and was informed. Defendant alleges that said article so published was and is a truthful publication, in that

it is a fair and true report of a judicial proceeding authorized by law, and is a fair and true report of the proceedings before the courts of Oklahoma; that said information contained in said article was obtained by it, the said defendant, from T. G. Reardon, in the mail in the due course of ordinary business. and purported to be a true and correct statement of facts which it purported to represent. The defendant therefore prays that plaintiff by his suit take nothing.

The plaintiff filed his reply, wherein he denied the allegations contained in defendant's answer that are inconsistent or contradictory to the allegations of plaintiff's petition.

The cause was tried to a jury. and at the close of all the evidence the defendant, Oklahoma Publishing Company, moved the court to instruct the jury to return a verdict in favor of the said defendant, which motion was by the court overruled and exception reserved.

The jury returned a verdict in favor of the plaintiff and against the Oklahoma Publishing Company for $1,000. Defendant's motion for new trial was overruled and exceptions saved. Judgment was rendered by the court in accordance with the jury's verdict, and the case comes regularly on the appeal of the defendant, the Oklahoma Publishing Company, to this court by petition in error and case-made attached.

For reversal of the judgment the Oklahoma Publishing Company, defendant, presents the following propositions in its brief: First, that the trial court erred in overruling defendant's motion for a directed verdict; second, that the court erred in its instructions to the jury; and third, that the verdict and judgment rendered in the trial court is not supported by the evidence and is excessive.

Under the first proposition, it is argued that it is apparent that the article complained of was not libelous per se; that there is no allegation of special damages contained in plaintiff's petition; and, further, that the said article is a fair criticism of a judicial proceeding, made in good faith.

A number of decisions of this court are cited in support of the well-settled rule that, where no special damages are alleged in the petition, if the publication complained of is not libelous per se. a demurrer interposed to the petition should be sustained. McKenney v. Carpenter, 42 Okla. 410, 141 Pac. 779; Nunnery v. Bailey, 65 Okla. 260, 166 Pac. 82;

Matthews v. Oklahoma Publishing Co., 103 Okla. 40, 219 Pac. 947.

It is a well-settled rule that, when the words used are libelous per se, it is not necessary to allege or prove special damages (Kelly v. Roetzel. 64 Okla. 36, 165 Pac. 1150), for malice and damage are implied; but when the words are not libelous per se, special damages must be alleged and proven to warrant recovery.

It is conceded that the petition in the instant case pleads no special damages, and that the proof adduced by the plaintiff disclosed no special damages, and if the article in question is not a libel per se, the cases cited by defendant would be applicable and the judgment therefore erroneous.

The vital question for determination on this phase of the case is whether the article in question is or is not libelous per se.

Words used in a libelous article are to be construed by their most natural and obvious meaning, and in the sense they would be understood by those reading the article. Phoenix Printing Co. v. Robertson, 80 Okla. 191, 195 Pac. 487; Matthews v. Oklahoma Publishing Co.. supra.

It will be observed that the article in question does not state that the writer thereof pleaded guilty to a violation of the traffic ordinance of the town and was given no consideration by the magistrate, but the writer states that he was arrested for a small traffic offense by the marshal, taken before the justice of the peace, and was given no consideration whatever, thereby leaving the reader of the article to infer that he was given no opportunity to present his side of the case in his defense; that he was fined, and that the plaintiff, sitting as a magistrate, and the marshal divided the fees in his presence and put the same in their pockets. and that "the marshal immediately departed to catch another tourist; * * * that tourists are watched very closely, but that local and neighboring citizens are in no way molested."

The article further charges that the writer thereof learned, after an investigation, that only a few days before he was arrested, a man and his wife and children, driving through the town of Afton, were arrested; that the municipal judge, plaintiff herein, found him guilty and assessed him a fine; that this man was poor, his car nearly worn out. and he was trying to get to a point where he could get work; that the man did not have money enough to pay his fine and the plaintiff then imposed a jail sentence,.

and that the citizens "would not stand for this rank injustice and the victim was eventually turned loose."

"Libel is a false or malicious unprivileged publication by writing, printing, * * * which exposes any person to public hatred, contempt, ridicule, or obloquy, or which tends to deprive him of public confidence or to injure him in his occupation. * * *" Section 495, O. S. 1921.

If these charges were true, as defendant's answer alleged they were true, the plaintiff was guilty of gross partiality in office and of oppression in office, and he would be liable to removal from office. Section 2394, C. S. 1921. Furthermore, it would be idle to say that the publication of such accusations in a daily newspaper of general circulation in the county where the plaintiff resided and exercised the functions of his office would not tend to deprive him of public confidence.

"Judges are unquestionably entitled to protection against libelous or slanderous imputations of misconduct in office, as are also justices of the peace." 17 R. C. L. 303.

The general rule covering cases of this character is stated in 25 Cyc. 351, as follows:

"Any words, oral or written, imputing want of integrity or incapacity to a judge are actionable per se. So it is actionable to publish that a judge has done that which would warrant removing him or depriving him of his office."

This general rule has been followed in this state in the case of Oklahoma Publishing Co. v. Kendall, 96 Okla. 194, 221 Pac. 762, in which case it is held in the eighth paragraph of the syllabus that:

"The general rule is that a publication which charges a public official with neglect of official duty, or incompetency in his office, or malfeasance in his office, is libelous per se."

It is contended that a justice of the peace under our law receives no salary, but does receive fees allowed by law, and that the words in relation to putting the fees in his pocket are clearly not defamatory on their face. These words, however, must be read in connection with the entire article, and, measured by the rule that the scope, spirit, and motive of the publication, taken in its entirety, must be considered (Wiley v. Oklahoma Press Publishing Co., 106 Okla. 52, 233 Pac. 224), it appears clear that the article in question conveys the obvious meaning that the marshal and justice were engaged in a practice or conspiracy of causing tourists only, violating the traffic ordinance, to be brought before the plaintiff for the purpose of obtaining and dividing fees between them.

Holding, as we do, that the article in the instant case, considered in its entirety, was libelous per se, it follows that the plaintiff was not required to either plead or prove special damages, and there was therefore no error committed by the trial court in overruling defendant's motion for an instructed verdict .

The record discloses that there was no evidence that even tended to establish the truth of the charges contained in the article in question.

The plaintiff testified that he had never imposed a fine on any man traveling through the town with his wife and children and imposed a jail sentence on the husband on account of lack of funds to pay the fine, as stated in the article, and that the first time that he ever heard of such an occurrence was when he read the article in question in the defendant's newspaper.

The evidence shows that instead of the writer of the article, Reardon, presenting his case to the justice of the peace, as stated in the article, Reardon entered a plea of guilty after having been first informed by the plaintiff of his right to a hearing on the complaint made against him of violating the traffic ordinance. There was no evidence of the fine and cost being divided in the court room between the plaintiff and marshal in the presence of Reardon or out of his presence. The undisputed evidence was that the plaintiff placed the fine and costs, amounting to $4.50, in his pocket and later turned the fine over to the city treasurer. Instead of tourists being closely watched and local and neighboring citizens left unmolested, as charged in the article, the undisputed evidence shows that practically no other tourists have been fined in plaintiff's court, and that most of the fines for traffic violations were imposed upon residents of the city of Afton.

Under the proposition that the plaintiff, being a justice of the peace and therefore a public officer, was subject to criticism, numerous authorities are cited. In practically all of the authorities cited or quoted by the defendant it appears that either the publisher must know the truth of the article, or he must believe it to be true and such belief must be founded on reasonable and probable grounds.

Defendant in his brief quotes from the case of Evening Post v. Richardson (Ky.) 68 S. W. 665. as follows

"In an action for libel, based on a communication published in defendant's' newspaper charging plaintiff with corruption in the discharging of his duty as an election officer, the fact that the communication was sent to defendant by a journalist of great experience, prudence, and accuracy, and that defendant, in good faith, believed each statement therein to be true, furnishes a sufficient basis for the plea of qualified privilege, and constitutes a good defense."

To the same effect is the case of O'Rourke v. Lewiston Daily Sun Pub. Co. (Me.) 36 Atl. 398, cited by defendant.

The managing editor for the defendant stated in his testimony that he knew nothing of the truth or falsity of that article at the time he passed on it and permitted it to be published in the Daily Oklahoman, and further that he made no investigation of any kind or character as to its truth or falsity. This witness further admitted that he did not know the writer of the article or what his reputation was in the community where he resided. He testified, however, that the article was written on the stationery of the Mideke Supply Company, and that that company was a reputable organization in Oklahoma City. The witness further stated that he had no reason to believe that the Mideke Supply Company, upon whose stationery the letter was written, had anything to do with the composition or publication of the article.

Section 497, C. S. 1921, reads in part as follows:

"A privileged publication or communication is one made: * * * Third, by a fair and true report of any legislative or judicial or other proceedings authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done or of the officer, falsely imputes crime to the officer so criticized."

In the case of Oklahoma Publishing Co. v. Kendall, supra, the court quotes with approval the case of Cook v. Pulitzer Pub. Co., 241 Mo. 326, 145 S. W. 480, as follows:

"The doctrine is supported by the highest authority that, if facts are stated in the publication upon which the comment is based, and such facts are false, then the defense of privileged comment fails."

The court in the cited case then says:

"We think the correct rule may be stated as follows: A public officer may be criticized by the public or the press regarding his official acts and conduct, on the theory that the public is entitled to know how the officer is discharging his trust, but false charges may not be published," citing numerous authorities.

Under the proposition that the court erred in its instructions to the jury defendant devotes considerable space in its brief to a discussion of the proposition that the plaintiff must first prove the publication of the article; that then, upon defendant's showing that it was published from proper motives and without malice on the part of the defendant, it becomes the duty of the plaintiff to prove malice. Defendant further contends for the rule that the article in question, being a criticism of a public officer, comes under the statute making it a privileged communication; that the burden therefore was upon the plaintiff to prove, not only that the article was false, but that the defendant knew it was false.

Many authorities are cited in support of the proposition contended for. The rules announced in the cases cited and discussed by defendant undoubtedly announce the law applicable to those cases. In the instant case, however, the truth of the contents of the article was made a defense. The article concerned a matter of public interest, as is contended by the defendant. In such cases this court, in Oklahoma Publishing Co. v. Kendall, supra, said:

"The defendant pleaded the defense of privilege, because it was comment on a matter of public interest. We think the correct rule for the court to follow in this class and character of cases is that announced in the case of Cook v. Pulitzer Pub. Co., supra, wherein the court stated: '* * * When a defense of privileged comment on a matter of public interest is presented by the issues, the plaintiff may overcome the privilege pleaded either by proof that the publication was inspired by actual malice, or that the facts published and commented upon were false.' In the case of Democrat Pub. Co. v. Harvey, 181 Ky. 730, 205 S. W. 908, in the body of the opinion it is said: 'In other words, where there is a plea of qualified privilege, the presumption of malice does not arise from the publication itself but from the falsity of the publication, and the burden of showing its falsity, where there is no attack upon the plaintiff's moral character, is upon the plaintiff.'"

In the case of Mundy v. Hoard, 216 Mich. 478, 185 N. W. 872, it is held that:

"It is not necessary to a recovery in an action in libel for the plaintiff to prove that the defendant knew the slanderous words to be false."

The court further states in Oklahoma Publishing Co. v. Kendall, supra, as follows:

"We do not think in this class of cases the question of whether the publication was made maliciously is material, except in so far as it related to exemplary damages."

The fifth instruction given by the court advised the jury that a privileged publication or communication was one of the defenses interposed by the defendant; that if the article was true. it was privileged and the plaintiff would not be entitled to recover; that if the article was false, then it would not be privileged, but would be libelous per se and malice in the publication would be presumed.

In view of the pleadings and the evidence in this case, we conclude that this instruction criticized by the defendant, when considered in connection with the court's entire charge, was a correct statement of the law applicable thereto and follows the rules in cases of this character announced by this court in Oklahoma Publishing Co. v. Kendall, supra.

The final proposition, that the verdict and judgment rendered in the trial court is not supported by the evidence and is excessive, cannot be sustained.

Upon the whole record we conclude that the defendant has no just cause to complain of the judgment. and the same should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 37 C. J. p. 35, §358; p. 91, §516. (2) 36 C. J. p. 1163, §28; p. 1180, §69. (3) 36 C. J. p. 1180, §69; p. 1181, §70; anno. L. R. A. 1918E, 27; 17 R. C. L. p. 301: 3 R. C. L. Supp. p. 648; 4 R. C. L. Supp. p. 1116; 6 R. C. L. p. 1007. (4) 36 C. J. p. 1274, §265; p. 1283, §289.