CASE 22—PROSECUTION AGAINST DAVID BROWNING FOR CRIMINAL LIBEL.
—SEPT. 25.

# Browning v. Commonwealth.

APPEAL FROM WEBSTER CIRCUIT COURT.

DEFENDANT CONVICTED AND APPEALS. AFFIRMED.

LIBEL AND SLANDER—CRIMINAL RESPONSIBILITY—WORDS IMPUTING DISPOSITION TO COMMIT CRIME—PRIVILEGED COMMUNICATIONS.

Held:   1. A written communication charging that a certain person would purloin a printing outfit if he had a chance at it, being calculated to bring him into contempt in the community in which he lives, is *per se* actionable, and sufficient to support an indictment for criminal libel.

2. A written communication charging that a certain person would purloin a printing outfit if he had a chance, and requesting the addressee to protect it, can not be held privileged without the showing of any facts which reasonably induced the writer to believe his property was in danger, or any necessity for his communication in reference thereto.

Browning v. Commonwealth.

LOCKETT & LOCKETT, for appellant.

### POINTS AND AUTHORITIES.

It is not libelous to write of another that he *will purloin* property if he has a chance at it. Townsend on Libel and Slander, sec. 161; Fanning v. Chase, 17 R. I., 388 (Am. St. Rep., 878), and cases therein cited; 13 L. R. A., 135.

Words must be false to be defamatory. Townsend on Libel and Slander, sec. 71. How can a prediction that a man *will do* something be proved to have been true or false?

The alleged libelous letter was from one interested in a newspaper outfit to another who had charge of it, and advises the latter that he would be looked to for its safety. Such a letter is conditionally privileged, and the court erred in telling the jury they could infer malice from the intentional sending of the letter. Hart v. Reed, 1 B. M., 166; Nichols v. Eatin, 110 Iowa, 509 (80th Am. St. Rep., 319).

The indictment is bad because it does not set out the entire letter. Townsend on Libel and Slander, sec. 137.

C. J. PRATT, attorney general, and M. R. TODD, for appellee.

A statement in a private letter that "B. will *purloin* all the outfit if he has a chance at it, so I will look to you to protect it for the present," is a criminal libel. The word "purloin," used in this letter, means literally to take or carry away for one's self; hence, to steal, to take by theft.

Defamation is a false publication regarding another to the injury of his reputation. The intent or motive with the words are used, is, as a rule, irrelevant. The party is presumed to have intended the natural consequences of his act.

Defendant claims that this was a private letter, and should be treated as a qualified privilege, and the court in its instructions required the jury to believe to the exclusion of a reasonable doubt that the words were false and maliciously published and written.

To constitute a publication the libel need not be made known to the public generally. It is enough if it be made known to a single third person.

### CITATIONS.

Duncan v. Brown, 54 Ky., 158; Odgers on Libel and Slander, 5, 120, p. 93, 94; Cooley on Torts, 204; Fanning v. Chase, 17 R. I., 388; 94 Am. Dec., 455; Lawson on Rights, Remedy and Practice, vol. 3, 1223; Hart v. Reed, 1 B. M., 166; A. & Eng. Ency. of Law (vol. 18), p. 918.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—AFFIRMING.

The appellant, David Browning, prosecutes this appeal from a judgment for $85 rendered against him in the trial of an indictment for criminal libel, which was based upon the following words in a letter written by the appellant to one L. C. Newman concerning George Beard, viz.: "You never answered my letter and I have since learned that you have gone to work for Beard. Don't let the type and outfit of the Banner get scattered until the 28th, when we can do something with it. Did Thompson pay you $75.00? Beard will purloin all of the outfit if he has a chance at it, so I will look to you to protect it for the present."

The first and most important question presented by the record for decision is whether in law the communication upon which the indictment was based should be deemed libelous. It is insisted for appellant that the words, "Beard will purloin all of the outfit if he has a chance at it," are not a libel, because they do not charge that he has actually purloined, but are the mere expression of an opinion on the part of the writer as to what Beard would do if an opportunity presented itself; that it is indispensable that the words, whether spoken or written, should charge "an act done or a condition existing;" that, if they merely charge that the party referred to will do a dishonorable or criminal act, that is not a defamation for which action will lie. It seems well settled in the law of slander that words which only imply a purpose or intention on the part of the person spoken of to commit a crime, or describe him as possessing a disposition, or as wanting in qualities, which would permit him to commit a crime, or amount to a charge that, if opportunity offers, he would commit it, are not per se actionable. See Newell on Defamation, Slander and Libel, section 101: 1 Starkie on Slander, 24; Townshend

on Slander and Libel, 162; Bays v. Hunt, 60 Iowa, 251, 14 N. W., 785; Fanning v. Chase, 17 R. I., 388, 22 Atl., 275, 13 L. R. A., 134, 33 Am. St. Rep., 878. But the law makes a clear and well-defined difference between spoken and written words. It does not require the imputation of a crime to render a publication libelous. Any defamatory words calculated to degrade or injure the reputation of a person in society, when written and published maliciously, are libelous. Riley v. Lee, 88 Ky., 603, 11 R., 586, 11 S. W., 713, 21 Am. St. Rep., 358; Allen v. Wortham, 89 Ky., 486, 11 R., 697, 13 S. W., 73. And the law is equally well settled that, where a defamatory libel on the character of an individual will support an action for damages, the publication amounts to an indictable offense, inasmuch as it tends to provoke violence and disturb the peace of society. 1 Starkie, 211. In Duncan, etc. v. Brown, 54 Ky., 186, it was held *prima facie* libelous to write and publish of one "that he would put his name to anything that another would request him to sign that would injure a third person." In this case there was no charge that the plaintiff had actually committed a crime, but there was, in effect, a charge that he could be made the tool of other persons to injure the plaintiff. This distinction between slander and libel is very clearly defined in A. & E. Ency. of Law (2d Ed.), vol. 18, p. 918, in these words, viz.: "Oral words which do no more than imply a purpose or intention on the part of the person spoken of to commit a crime . . . are not slanderous *per se*. But it is otherwise when the words are written, and it is well settled that written words which import that another intended to commit a crime, or that he had a criminal disposition, are actionable without proof of special damages." See numerous cases cited in note to support text. We think it is impossible to escape the

conclusion that the words on which the indictment is grounded in effect charge that Beard, if opportunity offered, would steal the printing outfit, and such a charge was certainly calculated to bring him into odium and contempt in the community in which he lived; and they were, therefore, *per se* actionable, and sufficient to support the indictment.

Appellant's next contention is that the extract from his letter which is made the basis of the charge clearly shows that a confidential relation existed between himself and Newman, and that it was written with the sole intention of having him guard certain property which he had intrusted to him from the rapacity of Beard, and was privileged. A privileged communication has been defined as one made upon a proper occasion, from a proper motive, in a proper manner, and based upon reasonable or probable cause. In such cases there is no *prima facie* presumption of malice from the publication. There must be some evidence beyond the mere fact of publication. It may be intrinsic from the style and tone of the communication. If it contains expressions which exceed the limits of privilege, such expressions are evidence of malice. Or it may be extrinsic, as by proof of actual malice, or that the statement was knowingly false, or that it was made without probable cause, or in any way that fairly and reasonably tends to overcome the *prima facie* presumption of protection under the privilege. The immunity of a privileged communication is an exception. The general rule is that nothing but proof of its truth is a defense of a libel, and he who relies on an exception must prove the fact necessary to bring himself within it. Actual malice can rarely be proven, and the only chance for redress for the plaintiff is ordinarily the want of probable cause in the

publication. It therefore follows that the defendant must show the information on which he relies in the publication to show probable cause. In this case the defendant has not attempted to show any facts which reasonably induced him to believe that his property was in danger from Beard, or any necessity for his communication on this point to Newman. And it is well-settled law that, if the matter charged as libelous be false, and the publication malicious, it can not be privileged. The instructions in this case submit this question to the jury, and they have found against the appellant.

It follows that the judgment must be affirmed.