## Thompson v. Bridges, et al.

(Decided June 19, 1925.)

### Appeal from Caldwell Circuit Court.

1. Libel and Slander—Accusations, Concerning Morality of School Teacher, Held Prima Facie Slanderous per se Making Allegation or Proof of Special Damage Unnecessary.—Accusations, concerning morality of school principal and his attitude towards, and conduct with, girls of school, were prima facie slanderous per se, as tending to show his unfitness, and to destroy his standing in his profession, rendering allegation or proof of special damage in action for slander unnecessary.

2. Libel and Slander—When Communication is Qualifiedly Privileged, Stated.—If communication is made in good faith, without actual malice, with reasonable or probable grounds for believing it to be true, upon subject matter in which author of communication has interest or in reference to which he has duty, and to person having corresponding interest or duty, such communication is qualifiedly privileged but if condition giving rise to qualified privilege fail, then privilege falls.

3. Libel and Slander—Accusations, Concerning Morality of School Teacher, Made at Meeting of Parent-Teachers' Association, Held Qualifiedly Privileged.—Accusations, against morality of public school principal and his conduct with girls of school, made at meeting of parent-teachers' association, were qualifiedly privileged.

4. Evidence—Courts Take Judicial Knowledge of Purpose of Parent-Teachers' Association.—Courts take judicial notice of fact that parent-teachers' associations are organized to bring school teachers and parents into closer co-operation to discuss problems of school and its welfare.

5. Libel and Slander—Publication, Under Conditions Disclosing Qualified Privilege, is Not Presumed Malicious, and Burden is on Plaintiff to Prove Actual Malice.—Although law presumes malice where publication is libelous or slanderous per se, if publication is made under conditions disclosing qualified privilege, presump-

tion of malice does not arise, and burden is on plaintiff to prove actual malice, and if he sustains this burden, privilege no longer exists.

6. Libel and Slander—Plaintiff, on Showing that Qualifiedly Privileged Statements Were False, Held to be Entitled to Go to Jury. —In action for slander in statements concerning school principal, made at parent-teachers' association, which were qualifiedly privileged, where plaintiff clearly showed falsity of statements, he showed actual malice and destroyed defense of privilege until it was restored by other proof, and was entitled to go to jury.

7. Libel and Slander—Malice May Be Inferred from Falsity.—Although alleged slanderous statements are qualifiedly privileged, malice, destroying privilege, may be inferred from falsity.

R. W. LISANBY and J. ELLIOTT BAKER for appellant.

S. D. HODGE and JOHN C. GATES for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The appellant brought this action against the appellees charging them with having uttered falsely, maliciously, wantonly and wickedly certain slanderous words of and concerning him with intent pursuant to common purpose and concert of action to injure, defame and destroy him both personally and professionally. The answer of the appellees was a traverse and plea of privilege. At the close of appellant's proof, the court peremptorily instructed the jury to find for the appellees and from the judgment entered on that verdict, appellant appeals. The sole question we have before us is whether or not appellant, on the evidence introduced, was entitled to have his case submitted to the jury. From the pleadings and proof, it appears that the appellant was a teacher in the colored high school of Princeton, as well as its principal, and that he also assisted in supervising the colored schools of Caldwell county. In the fall of 1922, a bitter campaign was waged for the offices of trustees of the colored schools at Princeton, in which campaign the conduct of appellant seems to have been an issue. Those who opposed appellant were elected. In April, 1923, appellees, together with others, organized a parent-teachers' association of the colored schools in question. It seems that some years prior to this time appellant had organized an association which he called the "Mothers' Club," and of which he was a member, but this club seems to have functioned only at graduating time and for the purpose of co-operat-

ing in these exercises. The evidence indicates that the parent-teachers' association started in April, 1923, was organized mainly for the purpose of looking into the conduct of appellant, especially with reference to his relations with the older girls of his school. At the organization meeting, nothing was said or done of which appellant complains in this suit, except that some of his supporters who wished to speak in his behalf were not permitted so to do, the chairman of the meeting seeming to have the idea that they had come ''To bury Caesar, not to praise him.'' At an adjourned meeting of this association held some ten days thereafter, and which was largely attended by the parents of the pupils who attended the school of which appellant was principal, the appellees in this case minced no words and made direct accusations concerning the morality of the appellant, and especially concerning his attitude towards and conduct with the older girls of his school, particularly Ethel Murray. There can be no question but that *prima facie* these remarks were slanderous *per se,* since they tended to show appellant's unfitness and to discredit his standing in his profession of a teacher, and being slanderous *per se,* it was not necessary to allege or prove special damage in order to sustain this action for slander. It was so held in Spears v. McCoy, 155 Ky. 1, 159 S. W. 610. Appellant also introduced a lot of proof to show that the statements so made were false and without foundation in fact. On this showing, appellant insists that he was entitled to have his case submitted to the jury at least in the absence of any contrary proof.

We are informed in the brief for appellees that the court based his peremptory instruction on the theory that the statements made by appellees were *prima facie* privileged, and that since the presumption of malice arising from a slanderous statement *per se* is rebutted when the statement is made under conditions showing *prima facie* privilege, the burden is then on the plaintiff to show actual malice in order to defeat the defense of privilege, which burden appellant failed to carry in this case. ''If a communication is made in good faith, without actual malice, with reasonable or probable grounds for believing them to be true, upon a subject matter in which the author of the communication has an interest or in reference to which he has a duty, public, personal or private, either legal, judicial, political, moral or social, and to a person having a corresponding interest or

duty," such communication is qualifiedly privileged. 36 C. J. 1241. If the conditions which give rise to the qualified privilege fail, then the privilege falls. In this case that the occasion on which the words complained of were spoken was one giving rise to a qualified privilege, we think clear, and in truth appellee does not seriously contest this point. It is a fact judicially known that parent-teachers' associations are organized for the purpose of bringing the school, teachers and the parents into closer co-operation, and for the purpose of discussing the problems of the school and its welfare. Hence teachers and parents are encouraged at such meetings to bring forward for discussion anything that will advance the interests of the school. Appellant was the principal of the school in question and if rumors were abroad concerning his conduct and morality and fitness to teach young girls, it was entirely proper that the same should be discussed at a meeting of an organization of this kind. Under such circumstances a discussion of a teacher's conduct and moral fitness, if made in good faith and without actual malice, and with reasonable or probable grounds for believing them to be true, would be privileged since it would be upon a subject matter in which the members of such an association would have a vital public, moral and social interest as it involves their children.

Although the law presumes malice where the publication is libelous or slanderous *per se,* yet if the publication be made under circumstances which disclose a qualified privilege, it is relieved of the presumption of malice and the burden is then on plaintiff to prove actual malice. If the plaintiff sustains this burden, then the privilege is no longer existent. In Democrat Pub. Co. v. Harvey, 181 Ky. 730, 205 S. W. 908, this court said:

"Ordinarily where a publication is libelous *per se,* the law presumes malice, and this presumption continues throughout the entire case until overcome by competent evidence. Reid v. Sun Publication Co., 158 Ky. 727, 166 S. W. 245. If, however, the publication be qualifiedly privileged, this relieves the publication from the presumption of malice otherwise attendant, and puts upon the plaintiff the burden of proving malice. Tanner v. Stevenson, 138 Ky. 578, 128 S. W. 878, 30 L. R. A. (N. S.) 200; McClintock v. McClure, 171 Ky. 720, 188 S. W. 867.

But inasmuch as malice may be inferred from the falsity of the statement contained in the publication, the burden of proving malice may be met by showing such falsity, and where, as in this case, the evidence on the question of falsity is conflicting, the question of malice is for the jury. Evening Post Co. v. Richardson, 113 Ky. 641, 68 S. W. 665. In other words, where there is a plea of qualified privilege, the presumption of malice does not arise from the publication itself, but from the falsity of the publication, and the burden of showing its falsity, where there is no attack upon the plaintiff's moral character, is upon the plaintiff. Evening Post Co. v. Richardson, *supra;* Vance v. Louisville Courier-Journal Co., 95 Ky. 41, 23 S. W. 591.''

In this case, appellant introduced a great deal of proof to show that the charges appellees made against him were false. Save by some inferences, there was no contrary proof. Malice may be inferred from the fact of such falsity. It follows that the appellant did meet the burden thrown upon him of showing actual malice and having done this, he has destroyed, at least until it be restored by other proof, the defense of privilege. Therefore, on the showing made so far in this case, appellant was entitled to have it submitted to the jury.

Judgment reversed for proceedings consistent with this opinion.