OPINION
McKEAGUE, Circuit Judge.
Steve Hodges sued Ford Motor Company and human resources manager Jack Halverson for defamation under Kentucky common law. The district court granted summary judgment to the Defendants, concluding that they had a qualified privilege to make the statements at issue. Because Kentucky law permits a jury to infer malice from the mere falsity of a statement, and a finding of malice is sufficient to defeat the qualified privilege at the summary judgment stage, we reverse.
I
Ford Motor employed Hodges at its truck plant in Louisville, Kentucky. Pursuant to Ford Policy C-3, employees may not: (a) exceed one supplier-paid meal per quarter, per supplier; (b) accept more than two supplier-paid entertainment or recreational events per year, per supplier; and (c) attend a supplier-escorted event requiring an overnight stay without a special exemption from a company vice president or above. Halverson conducted an investigation into violations of Policy C-3 and requested that Hodges keep the investigation confidential. Halverson eventually concluded that Hodges had violated Pol *453 icy C-3 with respect to a particular vendor (Abel Construction) and had failed to keep the investigation confidential.
On April 26, 2004, Halverson met with Hodges and Chuck Hoffman, a personnel supervisor, to terminate Hodges’s employment. According to Hodges, Halverson told him at the meeting:
[W]e find you in violation of C-3 — in violation of C-3 for too many meals with a supplier in a quarter, or per quarter. We also find you in violation of C-3 policy regarding too many entertainment ... too many outings per year per supplier. We find you in violation of going on an overnight trip without your manager’s approval.
... I asked you to keep this confidential. We find you in violation of ... breach of trust, or confidentiality ... for speaking to other Ford employees.
We also find you in violation of speaking to vendors.
* * *
Based on this, we feel it’s in the best interest of the company to sever all ties.
$ :{i
You’re fired.
Hodges admits that he violated Policy C-3 by attending an overnight supplier event without proper approval. However, Hodges avers that the remaining statements are false.
Hodges sued the Defendants in Kentucky state court. Invoking diversity jurisdiction, the Defendants removed the action to federal district court. 28 U.S.C. § 1332. After the close of discovery, the Defendants moved for summary judgment. The district court held that Hodges had made a prima facie case of defamation per se. Hodges v. Ford Motor Co., No. 04-538, 2006 WL 517609, at *3 (W.D.Ky. Mar. 1, 2006). The district court concluded, however, that Halverson made the statements in good faith and without malice and, therefore, Kentucky’s qualified privilege protected the Defendants from a claim of defamation. Id. at *6. Accordingly, it granted summary judgment to the Defendants. Id.; see also Hodges v. Ford Motor Co., No. 04-538, 2006 WL 1687572, at *2 (W.D. Ky. June 15, 2006) (denying Hodges’s motion for reconsideration).
Hodges timely appealed.
II
A. Standard of Review
We review de novo a district court’s grant of summary judgment. Bender v. Hecht’s Dep’t Stores, 455 F.3d 612, 619 (6th Cir.2006), cert. denied, — U.S.-, 127 S.Ct. 2100, 167 L.Ed.2d 814 (2007). Summary judgment should be granted when “the pleadings, the discovery and disclosures on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). Because this matter comes to federal court under diversity jurisdiction, we apply the defamation law of the forum state, in this case Kentucky. Gahafer v. Ford Motor Co., 328 F.3d 859, 861 (6th Cir.2003). In resolving an issue of state law in federal court, we must “ ‘make [the] best prediction, even in the absence of direct state court precedent, of what the Kentucky Supreme Court would do if it were confronted with’ ” the same question of law. Managed Health Care Assocs., Inc. v. Kethan, 209 F.3d 923, 927 (6th Cir.2000) (quoting Welsh v. United States, 844 F.2d 1239, 1245 (6th Cir.1988)).
B. Defamation Under Kentucky Law
1. Defamation Per Se
To establish a prima facie case of defamation, the plaintiff must show: (a) “de *454 famatory language”; (b) “about the plaintiff’; (c) “which is published”; and (d) “which causes injury to reputation.” Stringer v. Wal-Mart Stores, Inc., 151 S.W.3d 781, 793 (Ky.2004) (citing Columbia Sussex Corp. v. Hay, 627 S.W.2d 270, 273 (Ky.Ct.App.1981)). As the Defendants concede, Hodges has satisfied all four elements. Halverson’s statements were defamatory, they were concerning Hodges, and Halverson said them in front of another person, thereby “publishing” them for purposes of Kentucky law. Id. at 794.
As for the final element, the proof necessary to demonstrate an injury to reputation varies depending upon into which of two classes the defamatory statement falls: per se or per quod. Hill v. Evans, 258 S.W.2d 917, 918 (Ky.1953). If the statement is defamatory per se, “damages are presumed and the person defamed may recover without allegation or proof of special damages.” Id. “If the word or words charged are actionable per se, the law presumes malice, and punitive damages may be recovered____” Ray v. Shemwell, 186 Ky. 442, 217 S.W. 351, 353 (1919). Here, the district court concluded and the parties do not dispute on appeal that the statements made by Halverson were defamatory per se because they directly tended to prejudice or injure Hodges in his profession, trade, or business. Hodges, 2006 WL 517609, at *3 (citing Brewer v. Am. Nat’l Ins. Co., 636 F.2d 150, 154 (6th Cir.1980)).
As Hodges has demonstrated a prima facie case of defamation, we next consider the Defendants’ defenses: absolute privilege and qualified privilege.
2. Absolute Privilege
In Kentucky, “truth is a complete defense[,] and thus a defendant able to prove the truth of the defamatory statement at issue cannot be held liable for defamation.” Stringer, 151 S.W.3d at 795-96 (internal citations and quotation marks omitted). Therefore, “if the evidence supports, without contradiction or room for reasonable difference of opinion, the defense that [the defamatory statements] were substantially true, it would necessarily follow that the jury should have been directed to find a verdict for the defendant, because truth is always a complete defense.” Herald Publ’g Co. v. Feltner, 158 Ky. 35, 164 S.W. 370, 372 (1914). The burden of proving truth falls upon the defendant because the falsity of defamatory words is presumed. Stringer, 151 S.W.3d at 796.
In order to constitute a complete defense, the truth must be as broad as the defamatory statement. “[T]he proof of the truth of a part only of a charge will not amount to a complete defense.” Register Newspaper Co. v. Stone, 102 S.W. 800, 801 (Ky.1907). The Defendants correctly point out that Hodges has admitted that he did not get the approval required for an overnight stay, constituting a violation of Policy C-3. However, Halverson also made statements that Hodges had too many meals with a supplier in a quarter, had too many entertainment outings per year per supplier, and violated confidentiality requirements, the truth of which Hodges disputes. Accordingly, the Defendants are not entitled to summary judgment based on absolute privilege.
3. Qualified Privilege
Kentucky also recognizes a qualified privilege against a defamation claim “where the communication is one in which the party has an interest and it is made to another having a corresponding interest ... if [the communication is] made in good faith and without actual malice.” Baker v. Clark, 186 Ky. 816, 218 S.W. 280, 285 (1920) (internal quotation marks omitted). *455 Whether there was a qualified privilege to make the statements is a question of law, id., and Kentucky courts have recognized a qualified privilege for defamatory statements relating to the conduct of employees, Stringer, 151 S.W.3d at 796 & n. 55 (collecting cases). The district court determined that Halverson’s statements fell within the privilege, Hodges, 2006 WL 517609, at *3, and Hodges does not dispute this determination.
As Halverson’s statements enjoy a qualified privilege, the presumption of malice raised by the defamation per se disappears, and “the burden is then on the plaintiff to prove actual malice.” Thompson v. Bridges, 209 Ky. 710, 273 S.W. 529, 530-31 (1925). “If the plaintiff sustains this burden, then the privilege is no longer existent.” Id. at 531. The privilege is “qualified by the proviso that it not be abused, i.e. that whatever defamation may have been spoken ... not be published with malice.” Columbia Sussex, 627 S.W.2d at 275. For summary judgment, the question becomes whether Hodges has shown that there exists a factual question regarding malice.
Hodges argues that Halverson’s statements were false and that malice can be inferred solely from such falsity. Based on its reading of Kentucky case law, the district court held that “actual malice can be inferred from falsity alone provided that the circumstances warrant such an inference.” Hodges, 2006 WL 517609, at *5 (citing Stringer, 151 S.W.3d at 797). The district court then considered the evidence presented by the parties and found that Hodges had not shown that Halverson had acted recklessly, even if the other Ford Motor employees had lied to him during his investigation. Id. In essence, Halverson had a good-faith basis for relying upon the statements of the other employees, in the view of the district court.
While the district court’s reading is in line with defamation law in some other states, cf. Robert D. Sack, Sack on Defamation: Libel, Slander, and Related Problems § 9.3.1 (3d ed.2007), it is not in accord with Kentucky law. For example, in Thompson, the plaintiff was a principal of a public school. Several members of the local PTA accused the principal of immorality, especially concerning his attitude towards and conduct with several of the older female students. The principal introduced evidence that the accusations were false. The Court of Appeals of Kentucky[1] first found that “a discussion of a teacher’s conduct and moral fitness, if made in good faith, and without actual malice, and with reasonable or probable grounds for believing them to be true, would be privileged.” Thompson, 273 S.W. at 530. The court then when on to hold,
inasmuch as malice may be inferred from the falsity of the statements contained in the publication, the burden of proving malice may be met by showing such falsity, and where, as in this case, the evidence on the question of falsity is conflicting, the question of malice is for the jury.
Id. at 531 (citation omitted). In so holding, the court relied upon an earlier decision, Evening Post Co. v. Richardson, 113 Ky. 641, 68 S.W. 665, 669 (1902), in which it decided “to adhere to the general rule of law laid down in this case, — that the question of malice in the publication should be submitted to the jury, and is to be inferred from the falsity of the publication.” See *456 also Commercial Tribune Pub. Co. v. Haines, 228 Ky. 483, 15 S.W.2d 306, 308 (1929) (“The same authorities further hold that plaintiff will discharge that burden [of establishing malice] by proving either express malice, or that the publication was false, from which latter fact implied malice will be presumed.”).
The Kentucky courts have repeatedly relied upon Thompson and Evening Post. For example, citing Thompson, the Kentucky Supreme Court recently held that “malice in fact,” sufficient to overcome the qualified privilege, “can be inferred from the fact of ... falsity.” Stringer, 151 S.W.3d at 799; see also Tucker v. Kilgore, 388 S.W.2d 112, 114 (Ky.1965) (“The significance of the defense of qualified or conditional privilege is that it removes the conclusive presumption of malice otherwise attaching to words that are actionable per se and thereby casts on the plaintiff a technical burden of proof in that respect. This does not require any greater degree of proof by the plaintiff, because the offensive character of the words still is sufficient by itself to support an inference of malice.” (internal citations omitted)); Democrat Publ’g Co. v. Harvey, 181 Ky. 730, 205 S.W. 908, 910 (1918) (“[I]nasmuch as malice may be inferred from the falsity of the statements contained in the publication, the burden of proving malice may be met by showing such falsity, and where, as in this case, the evidence on the question of falsity is conflicting, the question of malice is for the jury.”). Moreover, prior panels of this court have recognized several times (albeit in unpublished opinions) that Kentucky law permits malice to be inferred from falsity alone. See, e.g., Roche v. Home Depot U.S.A., 197 Fed. Appx. 395, 401 (6th Cir.2006) (explaining that with regard to the qualified privilege, a plaintiff “can prevail by demonstrating the actual falsity of Home Depot’s statements, or Home Depot’s reckless disregard for their truth or falsity”); Brewer v. Am. Nat'l Ins. Co., No. 82-5039, 709 F.2d 1499, 1983 U.S.App. LEXIS 13119, at *18 (6th Cir. Apr. 27, 1983) (“[I]t is clear that though a defense of privilege exists absent the presence of malice, malice may be established directly or may be inferred from the falsity of the statement itself.”). At least one treatise commentator has taken notice of Kentucky’s apparently singular approach to defamation: “Although its law is not entirely clear, Kentucky appears to have adopted the unique rule that the offensive character of the words, or the fact of falsity, are themselves sufficient to support an inference of ‘malice’ for ... purposes [of the qualified (conditional) privilege].” Sack on Defamation § 9.3.1, at 9-42 (footnotes omitted).
The Defendants ask us to read Stringer and other Kentucky decisions narrowly, claiming that malice only can be inferred from falsity when there is no factual basis to support the defamatory statement. However, this interpretation is contrary to the Stringer court’s own characterization of qualified privilege as placing only a “technical burden of proof regarding malice upon the plaintiff’ that “does not require any greater degree of proof by the plaintiff.” Stringer, 151 S.W.3d at 797 (internal quotation marks omitted). Stringer explained that “the offensive character of the words ... is sufficient by itself to support an inference of malice,” without any requirement that there be an absence of evidence to support the statement. Id. (citation omitted, emphasis added). Furthermore, prior cases applying qualified privilege impose no such requirement. See, e.g., Democrat Publ’g, 205 S.W. at 910; Evening Post, 68 S.W. at 667-68 (allowing the jury to infer malice from falsity even though the defendant claimed having received the information from “a journalist of great experience, prudence, and accuracy” and having “in good faith believed each *457 statement ... to be true”). The qualified privilege shifts to the plaintiff “the onus of proving malice in fact, but not of proving it by extrinsic evidence only.” Evening Post, 68 S.W. at 668 (citation omitted). “He has still the right to require that the alleged libel itself shall be submitted to the jury, that they may judge whether there is evidence of malice on the face of it.” Id. (citation omitted).
The Defendants also argue that allowing malice to be inferred from falsity would impose strict liability for defamatory statements otherwise protected by privilege. However, under a strict liability regime, falsity and malice are presumed if the plaintiff makes out a prima facie case of defamation per se. See Stringer; 151 S.W.Sd at 794, 796. As here, when the plaintiff makes a prima facie case but the defendant enjoys a qualified privilege, the plaintiff must prove (not presume) malice either by extrinsic evidence or by possible inference from the falsity of the statement, in which case the plaintiff bears the burden of actually proving falsity. Thompson, 273 S.W. at 531. Proving a statement is false does not create a necessary inference of malice, just a possible inference that a factfinder can choose to accept or reject. See Democrat Publ’g, 205 S.W. at 911 (“[T]he court will tell the jury that malice may be presumed from the falsity of the statements contained in the publication; and that, if they believe from the evidence that the publication was false and maliciously made, they will find for plaintiff; but if they believe from the evidence that the statements contained in the publication were substantially true as published, or were a reasonable and fail’ criticism of the acts and conduct of the plaintiff ..., and were made in good faith and without malice, they should find for the defendant.” (emphasis added)).
Because the factfinder can infer malice solely from falsity, the effect of qualified privilege is to shift the burden from the defendant to prove truth to the plaintiff to prove falsity. Instead of the defendant having to prove the truth of the defamatory statement at trial (thereby establishing an absolute privilege), the burden is placed on the plaintiff to prove the falsity of the statement (to rebut the defendant’s qualified privilege). Thus, while the qualified privilege may be largely toothless at summary judgment, the privilege still has some bite at trial.[2]
Based on our reading of Kentucky law, we conclude that the district court *458 erred. Hodges testified that he paid his own way to several of the events or that a vendor other than Abel Construction paid his way. He also testified that when he paid, he paid in cash, and did not have receipts. ■ It is undisputed that the paperwork originally submitted by Abel Construction suggested that Hodges did not violate Ford Motor’s vendor policy, but only when Halverson asked Abel Construction’s upper management to re-review the matter did the vendor provide revised reports suggesting Hodges did violate the policy. While the weight of the evidence might appear to favor the Defendants, it cannot be said that Hodges’s version is wholly implausible. Where the evidence on the question of falsity is conflicting, the questions of whether the statements were false and whether those false statements result in an inference of malice are for the factfinder to decide under Kentucky law.
Ill
For the reasons set forth above, we REVERSE and REMAND the case to the district court for proceedings consistent with this opinion.

. Before 1976, the Court of Appeals of Kentucky was the highest court of the Commonwealth.

. In the dissent’s view, Kentucky’s defamation • law involves a five-part, burden-shifting analysis when a defendant relies on the qualified privilege. The plaintiff has the initial burden (1) to plead defamation per se; (2) the burden then shifts to the defendant to allege a qualified privilege; (3) the burden shifts back to the plaintiff to provide some evidence of malice, e.g., the communication is false; (4) the burden shifts again to the defendant to provide evidence of its reasonable investigation and good faith reliance; and (finally) (5) the burden shifts once again to the plaintiff to show greater evidence of malice.
There are several problems with this approach. First, we are not aware of any Kentucky decision setting forth this type of analysis in explicit terms for purposes of summary judgment. Second, courts cannot weigh evidence at the summary-judgment stage. The dissent's final proposed burden — requiring the plaintiff to show greater evidence of malice — treads dangerously close to, and likely crosses over, the line of impermissible evidence weighing at this stage of the litigation.
Finally, as noted supra, several Kentucky decisions, specifically relied upon by the Kentucky Supreme Court in Stringer, have held that once the plaintiff has provided sufficient evidence of falsity, the question of whether the plaintiff has met his or her "technical burden of proof" is one for the jury, not the judge. 151 S.W.3d at 797. Specifically, in crafting its burden-shifting test, the dissent quotes approvingly from Thompson: ”[W]hile the presumption of malice will ordinarily arise from the publication of the slanderous language, when there is a qualified privilege *458 the presumption of malice arises after the plaintiff proves the statement false ‘and, having done this, [the plaintiff] has destroyed, at least until it be restored by other proof, the defense of privilege.'" Dis. at 2 (quoting Thompson, 273 S.W. at 531 (emphasis added by dissent)). The dissent apparently takes the emphasized phrase to mean that the defendant can restore the qualified privilege at summary judgment by showing good faith, lack of actual malice, and reasonable or probable grounds for believing the statements to be true. Yet, the Thompson decision relies on Democrat Publishing for the proposition that, “inasmuch as malice may be inferred from the falsity of the statements contained in the publication, the burden of proving malice may be met by showing such falsity, and where, as in this case, the evidence on the question of falsity is conflicting, the question of malice is for the jury.’’ 273 S.W. at 531 (quoting Democrat Publ’g, 205 S.W. at 910). Thus, the better reading of Thompson's “until it be restored by other proof" is that the phrase refers to proof to be weighed by the jury. A showing of falsity or of a question of falsity destroys the qualified privilege entirely for purposes of summary judgment, but the defendant can resuscitate the privilege at trial.