Kennedy, Circuit Judge, dissenting.
While I generally agree with the majority’s analysis of Kentucky defamation law, I believe it stops short after determining that Mr. Hodges allegation of falsity is enough to continue to trial. I believe that Kentucky defamation law operates in a case such as this as follows: (1) a suit is pleaded alleging defamation per se; (2) the defendant alleges qualified privilege, which is established by the circumstances of the communication, and once established shifts the burden of proving malice to the plaintiff; (3) the plaintiff alleges the falsity of the communication, which permits an inference of malice and therefore provides some evidence of malice; (4) the defendant provides evidence regarding its reasonable investigation and good faith belief regarding the communication; and finally, the point at which the majority and I diverge, (5) the plaintiff must now, and Mr. Hodges has not, present greater evidence of malice to show that the defendant did not in fact conduct a reasonable investigation or did not speak in good faith. At step five, the plaintiff no longer can carry his burden of proof, and therefore continue to trial, based on the mere allegation of falsity. Because I believe this to be the correct view of Kentucky defamation law, and because I believe Mr. Hodges has not met his burden under step five, I respectfully dissent.
I. Kentucky Defamation Law Regarding Falsity in Qualified Privilege Cases
The majority’s holding, that an allegation- of falsity will always be enough to *459 permit the plaintiff to proceed to trial, is unsupported by Kentucky case law. The Kentucky Supreme Court’s most recent pronouncement of defamation, Stringer v. Wal-Mart Stores Inc., 151 S.W.3d 781 (Ky.2004), provides support for granting summary judgment to the defendants. Stringer involved a store manager making oral statements at a store-wide meeting and in public areas. 151 S.W.3d at 792. Although hesitant to do so, the court treated the statements as protected by qualified privilege. Id. at 798. To overcome the privilege, the court stated that the plaintiff must prove malice, and proof of malice “ ‘requires a showing of knowledge of falsity of the defamatory statement or reckless disregard of its truth or falsity.’ ” Id. (quoting McCall v. Courier-Journal & Louisville Times Co., 623 S.W.2d 882, 885 (Ky.1981)). The court found, and Wal-Mart introduced no contrary proof, that the statement made was false, and that the manager had “no factual basis whatsoever” for making the statement. Id. at 798. Falsity in this case sufficed to prove malice, because “‘[mjalice can be inferred from the fact of ... falsity.’ ” Id. (quoting Thompson v. Bridges, 209 Ky. 710, 273 S.W. 529, 531 (1925) (emphasis added)). The question is the circumstances under which such an inference of malice arises, as well as the weight to be given to the inference.
The cases positively cited to and relied upon by Stringer provide greater clarity regarding when such an inference arises and when that inference amounts to enough proof to withstand summary judgment. Stringer cited Thompson v. Bridges, 209 Ky. 710, 273 S.W. 529 (1925) for permitting an inference of malice from falsity. The plaintiff in Thompson “introduced a lot of proof to show that the statements so made were false and without foundation in fact. On this showing, [plaintiff] insisted] that he was entitled to have his case submitted to the jury at least in the absence of any contrary proof.” 273 S.W. at 530 (emphasis added). The court held that while the presumption of malice will ordinarily arise from the publication of the slanderous language, when there is a qualified privilege the presumption of malice arises after the plaintiff proves the statement false “and, having done this, [the plaintiff] has destroyed, at least until it be restored by other proof the defense of privilege.” Id. at 531 (emphasis added). The Thompson court stated that the statements made would be privileged, i.e. the defense would be restored, if the defendant proves that the communications were “made in good faith, and without actual malice, and with reasonable or probable grounds for believing them to be true.” Id. at 530. This means that the plaintiff can carry its burden of proving that the defendant either lacked “good faith” or had no “reasonable or probable grounds for believing” the truth of his statements (i.e. acted with malice) by showing that the statements were in fact false, absent evidence presented by the defendant that there were reasonable grounds to believe the truth of the statements and good faith in making the statements. Id. at 530-31. This holding is consistent with similar cases cited in Stringer. See, e.g., Tucker v. Kilgore, 388 S.W.2d 112, 114, 116 (Ky.1965) (holding that the “offensive character” of the words spoken to be sufficient to infer malice because the defendant did not have personal knowledge of the facts communicated, and did not exercise reasonable care in determining the truth prior to communication); Tanner v. Stevenson, 138 Ky. 578, 128 S.W. 878 (1910) (“In ordinary cases under the general issue the plaintiff will not be permitted to prove the falsity of the charges made by the defendant either to show malice or to enhance damages, for *460 his innocence is presumed, unless the defendant seeks to protect himself under col- or of the circumstances and occasion of writing or speaking the words, in which case it seems that evidence that the charge was false and that the defendant knew it to be so is admissible to rebut the defense.” (quoting Greenleaf on Evidence, vol. 2, § 419) (emphasis added)).
While the majority disagrees with my reading of the quoted language from Thompson regarding the plaintiffs burden of proof, see Maj. Op. at 457-58 n. 2, Baskett v. Crossfield, 190 Ky. 751, 228 S.W. 673 (1920), another case approvingly cited in Stringer, e.g., Stringer, 151 S.W.3d at 797 n. 56, provides ah excellent example of a case where falsity alone was not enough to withstand a directed verdict when the defendant had entered proof of good faith and reasonable investigation. In that case, a university president expelled a pupil and wrote two explanatory letters to the pupil’s father, which included the fact that the pupil had been exposing himself in front of a window and was seen by female pedestrians. 228 S.W. 673-75. The court there noted that there was “such conflict” in evidence regarding whether or not the pupil had taken such action that the statement’s truth or falsity was a question for the jury. ■ Id. at 675. Despite the fact that the statements could be false, the court still held them privileged and upheld the directed verdict for the defendant. It noted that the president had “done only what his duty required of him,” that his words were “gentl[e] and rather apologet-ice ],” and that the “letters were written in the utmost good faith and for the good of the father.” Id. at 676. The court further stated that “there [was] a total absence of evidence tending to. show malice on the part of President Crossfield towards young Baskett or his father.” Id. While the communication may have stated a false fact, it was not communicated out of malice or without reasonable investigation, and therefore held privileged as a matter of law.[3] See id.
Stewart v. Williams, 309 Ky. 706, 218 S.W.2d 948 (1949), again a case positively noted in Stringer, e.g., Stringer, 151 S.W.3d at 797 n. 58, also provides a fine example of falsity not being enough. The defendant’s statement in Stewart was that the plaintiff had gotten drunk on two occasions. 218 S.W.2d at 949. The court stated, however, that the false nature of the charge would not be enough; “[i]f the privilege is qualified, false and defamatory statements ivill not give rise to a cause of action unless maliciously uttered.” Id. at 950 (emphasis added). There the court held that there was no evidence of malice, *461 despite the fact that plaintiff alleged falsity, because the plaintiff had caused the inquiry to be put to the defendant which led to the utterance, and because the persons present during the utterance “were proper persons to be called into consultation concerning the subject matter.” Id. at 708, 218 S.W.2d 948.
Indeed, the Kentucky Supreme Court has held that testimony regarding the falsity of the underlying facts is irrelevant where the defendant is not alleging a defense of truth but instead claims privilege and enters evidence that he spoke based upon evidence a reasonably prudent person would believe and that he spoke in good faith. Edwards v. Kevil, 133 Ky. 392, 118 S.W. 273, 275 (1909). The court held that even though the plaintiff could prove the statements false, such proof was irrelevant to contradict defendant’s proof that he had a reasonable belief and spoke in good faith. Id.; see Stewart v. Hall, 83 Ky. 375 (1885) (“The law only requires, however, good faith, and not infallible judgment....”). Falsity of the statement, then, merely provides enough evidence of lack of probable cause in speaking because the jury is allowed to infer malice from falsity, but when defendant shows he had probable cause, mere falsity is not enough to withstand summary judgment. See Browning v. Commonwealth, 116 Ky. 282, 76 S.W. 19, 20 (1903) (“Actual malice can rarely be proven, and the only chance for redress for the plaintiff is ordinarily the want of probable cause in publication. It therefore follows that the defendant must show the information on which he relies in the publication to show probable cause. In this case the defendant has not attempted to show any facts which reasonably induced him to believe [the truth of his assertion]. And it is well-settled law that, if the matter charged as libelous be false, and the publication malicious, it cannot be privileged.”); accord Ranson v. West, 125 Ky. 457, 101 S.W. 885, 886 (1907) (“No action will lie for false statements contained in [a privileged communication], unless it be shown that it was both false and malicious.”).
That my reading of Stringer is accurate is borne out by later Kentucky court of appeals’ cases applying it. The court of appeals held in Boggs v. Wal-Mart Stores, Inc., NO.2005-CA-000329-MR, 2006 WL 1045413 (Ky.Ct.App. Apr.21, 2006) that if words are protected by the qualified privilege, then the plaintiff must “prove that the defamatory statement was published with actual malice, which ‘requires a showing of knowledge of falsity of the defamatory statement or reckless disregard of its truth or falsityf.]’ ” Boggs, 2006 WL 1045413, at *3 (quoting Stringer v. Wal-Mart Stores, Inc., 151 S.W.3d 781, 799 (Ky.2004) (quoting McCall v. Courier-Journal & Louisville Times Co., 623 S.W.2d 882, 885 (Ky.1981))). Applying Stringer in Vorobiev v. Hersh, No.2005CA-002522-MR, 2007 WL 706816 (Ky.Ct. App. Mar.9, 2007), the court of appeals upheld a grant of summary judgment for the defendant on the basis of qualified privilege, stating that:
Neither did the[plaintiffs] succeed in establishing “actual malice” on the part of [the defendant] by showing that he acted with knowledge that his statements concerning [plaintiffs] were false or with reckless disregard of their truth or falsity.... [The defendants response was restrained in light of the accusation [leveled at him by the plaintiffs]. The only reasonable interpretation of the intent of [the defendants e-mail is precisely what it purports to be — a request for an investigation regarding the students’ allegations about him.... On the basis of the undisputed facts and the unambiguous content of [the defendants e-mail, *462 we [uphold the grant of summary judgment].
2007 WL 706816, at *3. Additionally, in Ashland Hosp. Corp. v. Calor, — S.W.3d -, NO.2006-CA-000395-MR, 2007 WL 1574606 (Ky.Ct.App. June 1, 2007), the court of appeals similarly upheld a grant of summary judgment because “[r]eview of the record disclose[d] nothing from which one might conclude that appellants’ communications [] were motivated by malice or were exercised other than ‘in a reasonable manner and for a proper purpose.’ Nor is there any suggestion that the communications [ ] ... were published in a reckless or excessive manner.” Calor, 2007 WL 1574606, at *3. All of these cases, just like some of the older cases discussed earlier, ended in summary judgment for the defendant based on qualified privilege despite the fact that the plaintiff had alleged falsity. If the majority’s understanding of Kentucky defamation law was correct, however, no case would ever end in summary judgment based on qualified privilege when there is a genuine issue of material fact regarding falsity.
II. Mr. Hodges’ Failure to Prove Malice
Mr. Hodges has failed to carry his burden of proving malice to overcome the defendants’ qualified privilege. First, this case is not one where malice would be presumed from the fact of falsity because the defendants have engaged in a thorough investigation, which gave them probable cause to believe the truth of Mr. Hal-verson’s statements, and because there is no evidence of bad faith.[4] Mr. Halverson *463 is not the manager in Stringer; he had a factual foundation for speaking the allegedly false statement. Cf. Stringer, 151 S.W.3d at 798. Despite Mr. Hodges proving the statement false (as we must assume on summary judgment) and thereby defeating the privilege, Mr. Halverson and Ford have “restored [the defense of privilege] by other proof,” proof that Mr. Hodges did not contradict. See Thompson v. Bridges, 209 Ky. 710, 273 S.W. 529, 530-31 (1925). While the plaintiffs proof that the statement is false raises some specter of malicious intent on the part of the defendant, see Tucker v. Kilgore, 388 S.W.2d 112, 114 (Ky.1965), it certainly does not constitute more than a scintilla of evidence to withstand summary judgment in this case because there is overwhelming proof of reasonable investigation by Mr. Halverson and no proof of malicious intent. Cf Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (“[The plaintiff cannot] rest on his allegations ... to get to a jury without ‘any significant probative evidence tending to support the complaint.’ ” (quoting First Nat’l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968))); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (explaining that when the circumstances alleged give rise to an inference of facts which plaintiff needs to meet the necessary elements, such inference will not be enough to withstand summary judgment when defendant comes forward to fill in the “unexplained gaps” rebutting the inference and plaintiff does not come forward with “direct evidence” to support the “specific facts.”).
Malice, however, can also be proved by the context of the communication. The Kentucky Supreme Court has discussed context as used to overcome qualified privilege as follows:
There must be some evidence beyond the mere fact of publication. It may be intrinsic from the style and tone of the communication. If it contains expressions which exceed the limits of privilege, such expressions are evidence of malice. Or it may be extrinsic, as by proof of actual malice, or that the statement was knowingly false, or that it was made without probable cause, or in any *464 way that fairly and reasonably tends to overcome the prima facie presumption of protection under the privilege.
Browning, 76 S.W. at 20; see Cole v. Wilson, 57 Ky. (18 B. Mon.) 212 (1857) (“But if [the statement] were accompanied by comments of a slanderous nature, not necessary to the attainment of this object, referring to an individual concerning whom no information was expected or desired, and setting forth facts which were foreign to the avowed object with which it was written, ... still this part [could prove malice].”); Fans v. Starke, 39 Ky. (9 Dana) 128 (Ky.1839) (discussing the secrecy with which the communication was made as evidence relevant to determining malice).
The context does not support a finding of malice in this case. The extensive investigation conducted by Mr. Halverson is discussed in footnote one above. Additionally, the words chosen were not the kind from which malice is inferred. Mr. Hal-verson merely laid out the general reasons for Mr. Hodges’ termination. J.A. at 13. Mr. Halverson did not use inflammatory language, did not embellish, did not verbally reprimand, did not taunt, nor did he use any other type of language that one would expect someone to use when motivated by malice to speak certain words. The information given to Mr. Hodges was the bare minimum of what would be expected, which does not suggest malice.
Mr. Hoffman’s presence, which is key to Mr. Hodge’s case because defamation requires publication, during the utterance also does not suggest malice. There is no evidence suggesting that Mr. Hoffman was someone that Mr. Hodges knew particularly well or someone in front of whom Mr. Hodges would be particularly embarrassed; Mr. Hodges said he did not have any kind of personal or professional difficulties with Mr. Hoffman. J.A. at 177. Additionally, Mr. Hoffman is the salaried personnel supervisor, and according to his sworn affidavit, he would have to be told of the reasons for Mr. Hodges’ discharge so as to ensure that all proper procedures were followed.[5] J.A. at 79. Mr. Hoffman also provided Mr. Hodges information during this meeting regarding what to do with Ford property and how the peer review process worked. J.A. at 81, 110, 112. Additionally, the utterance occurred in a private office with the door closed. J.A. 38, 79,105.
The last bit of proof put forward by Mr. Hodges, aside from falsity and context, is that Mr. Halverson held a grudge against him, and therefore spoke from malice. Mr. Hodges alleges that Mr. Halverson had a “desire to get [Mr.] Hodges out of Ford.” Pl.’s Br. at 11. He asserts that this desire arose from an incident about a year prior to Mr. Hodges’ termination. Mr. Halverson had determined that Mr. Hodges’ time was improperly coded for the Ford payment system, and that this improper coding was resulting in Mr. Hodges *465 getting too much overtime pay. J.A. at 39, 170-71. Mr. Hodges told Mr. Halverson that he had changed the coding so as to save Ford money, and that he had the approval of his supervisor. J.A. at 168-69. Mr. Hodges claims that Mr. Halverson responded that Mr. Hodges was previously told to code his time in another manner, and that if Mr. Halverson “could prove [that Mr. Hodges had been so told], th[eir] conversation would have a much different outcome, so [Mr. Hodges] better watch [him]self.” J.A. at 169-70. Mr. Hodges claims the import of this warning was that Mr. Halverson wanted to fire Mr. Hodges.
Even accepting this version of events as true, as we are required to do for the nonmovant, such a fact does not prove malice. An allegation of general hatred will not do when trying to prove the malice necessary for a defamation claim. See, e.g., Baskett v. Crossfield, 190 Ky. 751, 228 S.W. 673, 675 (1920) (holding that the publication must be inspired by malice). Mr. Hodges would have to allege and prove that Mr. Halverson uttered those specific, false words in front of Mr. Hoffman because he wanted to spite or otherwise harm Mr. Hodges. While Mr. Hodges alleges Mr. Halverson dislikes him, he does not allege and he has no proof that Mr. Halverson set up the scenario of termination and uttered those words out of hatred or ill will. Mr. Hodges version of the facts only presents a scenario that occurred more than a year prior to his termination with no other interaction between the two until Mr. Hodges’ termination, a gap which greatly undermines his claim that this previous incident proves Mr. Halverson’s malice. Additionally, he only alleges Mr. Halver-son made a vague statement that Mr. Hodges should “watch [him]self.” This vague statement does not prove that Mr. Halverson ever had malice toward Mr. Hodges, or that he would have malice lasting over a year and for some unknown reason determine it was then time to make up fabrications to terminate Mr. Hodges and at the same time embarrass Mr. Hodges by uttering the fabricated reasons for discharge in front of Mr. Hoffman, whose presence is the only reason for finding that the utterances were “published,” which is required for defamation. This is particularly the case when all of the objective evidence uncovered in Mr. Halverson’s investigation supports Mr. Halverson’s statements about Mr. Hodges.
Because I believe that a careful analysis of Kentucky defamation law reveals that Mr. Hodges did not meet his burden of proof of establishing malice on the part of Mr. Halverson, and that the defendants are therefore entitled to summary judgment, I respectfully dissent.

. I believe that this case is the clearest of all regarding the nature of evidence required to overcome a qualified privilege when a defendant has entered evidence of good faith and reasonable investigation. The majority's conclusion, that evidence of falsity is always enough to permit a jury verdict for the plaintiff, completely fails to explain the result in Baskett. The jury had found for the plaintiff, and yet the court overturned the jury verdict and directed a verdict for the defendant because, despite the fact that the jury could have found the statements false, 228 S.W. at 675, falsity alone was not enough to overcome the defendant’s qualified privilege when the defendant had entered proof of good faith and reasonable investigation, 228 S.W. at 676. The only way to reconcile this case with the majority’s analysis is to hold that despite the fact a plaintiff can proceed to trial solely on evidence of falsity and despite the fact that the defendant has entered unrebutted evidence of good faith, as the majority finds, the jury is not permitted to render a verdict for the plaintiff absent greater proof, as Kentucky’s highest court held in Baskett. That this reading of the law is unsupported is obvious on its face; it would be incongruous to hold that a plaintiff has enough evidence to proceed to trial despite the fact that the plaintiff does not have enough evidence for the jury to render a verdict for the plaintiff.

. The facts surrounding Mr. Halverson's investigation are as follows: first, Mr. Halver-son contacted Mike Gies, Abel Construction’s on-site representative at the Ford Kentucky Truck Plant (KTP), and asked him for Abel’s expense records detailing perquisites provided to KTP employees. J.A. at 36, 68. Abel Construction was required to keep such records so that Ford could conduct audits to ensure that its employees were not violating Policy C-3, which limited the amount of meals and entertainment an employee could accept, as well as outright banned things like overnight trips taken without approval of a vice president or higher. J.A. at 40-42. When Amy Snider, the area manager, found out about a meal the records reflected that she attended when she was in fact not there, Ms. Snider informed Mr. Halverson of the discrepancy. J.A. at 36, 62. Mr. Halverson then contacted Abel Construction headquarters and asked for the expense records to be provided again, but this time without the participation of Mr. Gies. J.A. at 36, 70. Abel Construction provided Mr. Halverson with the company's expense records detailing the amount, the date, and the recipient of things such as meals. J.A. at 60-61. The company also provided Mr. Gies's credit card bills and expense reports. J.A. at 47-58. Mr. Halver-son then requested further clarification on ambiguous entries, because some meal expenses did not indicate who the recipients were, and also asked the company to ensure that the records were completely accurate. J.A. at 59. Abel Construction provided updated information to Mr. Halverson a couple more times as it learned more about the expenses. J.A. at 63, 65.
Mr. Halverson had reason to ask Abel Construction for such detailed records. Cheryl Collins, an engineering superintendent, told him that she saw Mr. Gies, Mr. Hodges, and Rick Morgan reviewing the initial list Mr. Gies provided to ensure that the records did not reveal any C-3 violations. J.A. at 64. Additionally, Ms. Snider not only told Mr. Halverson that she was not at a dinner that the records stated she attended, she also told him that Mr. Hodges had doctored the records to make it appear as if she was there when in fact Mr. Hodges was there. J.A. at 62. She further stated that Mr. Hodges had asked her to lie about the matter. Id.
Mr. Halverson then had reason to believe that Mr. Hodges had committed three policy C-3 violations as well as broken his promise to keep the audit confidential. The records provided by Abel Construction as well as the statements of Ms. Collins and Ms. Snider provided more than enough reason to hold such a belief. During the course of the investigation, Mr. Halverson sat down with Mr. Hodges twice and asked him whether or not he was treated to things such as dinner and golf by *463 Abel Construction on specific dates, in specific places. J.A. at 75, 119-21. Mr. Hodges said that while he did attend some of the listed events, he did not attend all of those about which Mr. Halverson was inquiring. J.A. at 134-36. Mr. Halverson disbelieved Mr. Hodges, and terminated him for the violations. J.A. at 107-08.
Mr. Halverson was entitled to rely on the information he had obtained from the different and ostensibly reliable sources when the only evidence supporting Mr. Hodges version of the events was his own statements. This is particularly true because Mr. Hodges admits violating the prohibition on overnight trips. While Mr. Hodges disagreed with Ms. Snider's statements to Mr. Halverson, he could not provide any reason for her to lie. J.A. at 156. Additionally, Mr. Hodges disagreed with Ms. Collins but said that the two had "got[ten] along fine'' and that he knew of no reason for her to lie. J.A. at 142, 152. Mr. Halverson had also obtained the impeaching records reflecting the violations directly from Abel Construction. Mr. Hodges now alleges in his brief that the updated records from by Abel were fabricated because Mr. "Halverson ... basically ordered Abel to provide ‘corrected’ records that purported to show that Hodges had [breached policy C-3].” Pl.’s Br. at 41. While such a bare allegation unsupported by even a shred of evidence may be fine for a pleading before discovery, it does not provide the specific evidence that the plaintiff needs to prove that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (“[The plaintiff cannot] rest on his allegations ... to get a jury without ‘any significant probative evidence tending to support the complaint.’ ” (quoting First Nat’l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968))).

. Mr. Hodges alleges that Ford has a policy requiring that anyone present during a termination must be at least one level above the employee being terminated. J.A. at 76. He further alleges that Mr. Hoffman was lateral to him in responsibility, and therefore should not have been present when Mr. Hodges was being fired. Id. Mr. Hoffman disputes both factual assertions, and further asserts that Mr. Hodges has no personal knowledge of human resources procedures because he has never worked in that department. J.A. at 79. This fact is not, however, material. Even if that was Ford’s policy, it was one that Mr. Hodges termed a “should,” not a “must.” J.A. at 76. Also, the context analysis does not change. Mr. Hodges did not allege that the words were particularly hurtful because Mr. Hoffman was present. There is no evidence that having Mr. Hoffman there was part of a scheme to hurt Mr. Hodges with the words used to terminate him. Mr. Hoffman's presence, therefore, does not change the context enough to provide an inference of malice.