## Democrat Publishing Company v. Harvey.

(Décided October 25, 1918.)

### Appeal from Webster Circuit Court.

1. Libel and Slander—Conduct of Public Men—Right to Criticise.— Comment on and criticism of the acts and conduct of public men are privileged if fair and reasonable and made in good faith, but the right to criticise does not embrace the right to make false statements of fact.

2. Libel and Slander—Implied Malice—Words Libelous Per Se.— Ordinarily where a publication is libelous per se, the law presumes malice and this presumption continues throughout the entire case until overcome by competent evidence.

3. Libel and Slander—Malice—Question for Jury—Burden of Proof —Qualified Privilege—Effect—Implied Malice.—Where a publication is qualifiedly privileged, this relieves the publication from the presumption of malice otherwise attendant, and puts upon the plaintiff the burden of proving malice, but inasmuch as malice may be inferred from the falsity of the statements contained in the publication, the burden of proving malice may be met by showing such falsity, and where the evidence on the question of falsity is conflicting, the question of malice is for the jury.

4. Libel and Slander—Plea of Qualified Privilege—Instructions.—In an action for libel, where there was a plea of qualified privilege based on the claim that the publication was a fair and reasonable criticism of the acts of a public officer, and was made in good faith and without malice, it was error to instruct the jury that the law presumed that the defendant printed and published the article with malice, and to give the jury a positive direction to find for plaintiff.

5. Libel and Slander—Plea of Qualified Privilege—Instructions.— In an action for libel, where there was a plea of qualified privilege, based on the claim that the publication was a fair and reasonable criticism of the acts of a public officer, and was made in good faith and without malice, it was error to require the jury, before finding for the defendant, to believe from the evidence that the statements complained of by plaintiff were substantially true as published, and were a reasonable and fair criticism of the acts and conduct of the plaintiff as a representative, and were made in good faith and without malice, since each of these defenses was complete in itself and the instruction should have

authorized a finding for defendant if the jury believed from the evidence that either was established.

W. A. BERRY and BAKER & BAKER for appellant.

BOURLAND & BLACKWELL, HUNT & BENNETT, ELWOOD HAMILTON and GEORGE S. WILSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, W. B. Harvey, brought this suit against the Democrat Publishing Company and John J. Berry, editor of the News-Democrat, a newspaper published and circulated in Paducah by the Democrat Publishing Company, to recover damages for libel. The jury found for defendant, John J. Berry, but returned a verdict against the Democrat Publishing Company in the sum of $5,000.00. Afterwards, plaintiff filed a remittitur of $2,500.00, whereupon judgment was entered in his favor for $2,500.00, and the Democrat Publishing Company appeals.

The action is based on the following editorial which was published in the News-Democrat on March 15, 1916:

"HOODLUMISM IN THE HOUSE.

"Kentucky has cause to bow her head in shame, to evade the gaze of her sister states, and forever feel ill at ease in decent society, after that disgraceful affair that occurred on the floor of the lower house of the legislature late Monday afternoon, in which the duly elected legislators of the people of Kentucky so far forgot the dignity and responsibility of their positions as to engage in the tactics of the low brow and the hoodlum, culminating the disgusting occasion with the drawing of a revolver and the flashing of a knife.

"Trouble started over the attempt to call out, over the protest of the Rules Committee, a bill limiting the shipment of liquor into dry territory, says the Associated Press report of the affair. Representative Harry Meyers, of Covington, was in the Speaker's chair at the time, Speaker Duffy having vacated a few minutes before and following a previous storm.

"There was an understanding that Meyers would recognize Representative Crow, of Oldham county, for the purpose of permitting him to move that the liquor

limit shipping bill be called out. There was a delay in granting this recognition and Representatve Frank C. Greene, of Carroll county, jumped to his feet and began a vituperative tirade against the acting speaker.

"Greene started running down the aisle calling on his adherents like an intoxicated cowboy at a roundup, to rally to his support and unseat Meyers. When he got halfway down, Representative (Rev.) W. B. Harvey, of Webster county, joined, bellowing and cavorting like a locoed steer.

"The two members had cast aside all decorum, all remembrance of decency and were creating a disgusting din, and Acting Speaker Meyers directed the Sergeant-at-arms and his seven assistants, including B. S. Williams, to seat the disturbing members. When the sergeant and his deputies attempted to execute this order, instead of being admonished by the order, doing the gentlemanly thing and sitting down, Representative Greene backed slowly away, defied anyone but the regularly elected Sergeant-at-arms to touch him, at the same time shouting to Harvey not to be seated, as but one Sergeant-at-arms was authorized. Then it was, according to the report that Harvey flashed a knife and began slashing at Williams, who had approached him. Williams, when he saw the knife, drew the holster intending to protect himself with the weapon which it contained. Before the weapon could be withdrawn from its scabbard, however, other members intervened, taking Williams and Harvey in charge.

"Think of the disgrace to the good name of the state! The news will go out to the world that there are men in the legislature of Kentucky so crude, ignorant and lawless that in their intercourse with their fellows in a dignified, parliamentary body, they can preserve no better decorum than savage Indians, backwoods badmen, or city hoodlums. Think of that; a gun play on the floor of the assembly room of the body which is next to the highest law making one in the state, a body which should, and it is naturally supposed would, consist of the best educated, the most self-controlled and dignified citizens in the whole state."

Defendants filed an answer admitting the publication, denying malice and pleading the truthfulness of the article. The Democrat Publishing Company further pleaded

that it was a corporation publishing and circulating a daily newspaper, and that the publication was a fair and reasonable criticism of the public acts of public officials performed in the discharge of their official duties, and that the publication was true and was made without any thought of the personality of the plaintiff, who was unknown even by sight to the editor of the News-Democrat, and to all of the officials of the paper. The Democrat Publishing Company also pleaded that it had been and was a subscriber to and a member of an association known as the "Associated Press," an independent organization engaged in the business of furnishing news items to its subscribers and members, which was recognized as a safe, sane, dependable and experienced organization, having in its employ able, competent and experienced employees, and that the defendant had a right to and did rely upon the fact that the news items furnished to it by said Associated Press were true in substance and in fact; that on the —— day of March, 1916, said Associated Press telegraphed to it as a news item an account of what transpired in the House of Representatives then in session at Frankfort and that said item so furnished to defendant by said Associated Press was as follows:

"That on the floor of the lower house of the Legislature, on March 13, 1916, B. S. Williams, an executive marshal, attempted to seat the plaintiff, a representative from Webster county; that Williams and others asserted, after the difficulty or later, that he pulled the revolver only after Harvey flashed a knife and made several slashes at him; that the trouble started over an attempt to call out over the protest of the Rules Committee, a bill limiting the shipment of liquor into dry territory, as Representative Meyers, of Covington, was in the chair, Speaker Duffy having vacated a few moments before and that there was an understanding that Crowe, a representative from Oldham county, was to be recognized by Meyers, and delay in granting this recognition resulted in Representative Greene, of Carroll county, bolting from his seat in the rear of the house, and beginning a tirade against the acting speaker. Further, that Greene had run half way down the aisle, and was calling his adherents to rally to his support in the endeavor to unseat Meyers, when Harvey sprinted down the aisle; that at this point Meyers directed the Sergeant-at-arms and his seven assistants, including Williams, to seat the said

members, that Greene backed slowly away, and defied anyone but the regularly elected Sergeant-at-arms to touch him, at the same time shouting to Harvey not to be seated as but one Sergeant-at-arms was authorized; that Greene later subsided, and after Williams had withdrawn and Crowe had been recognized, moved that the bill be taken from the orders of the day. Placed upon its passage motion carried 53 to 39; that Meyers ruled a two-thirds vote necessary and that Greene and Harvey appealed, but the chair was sustained by the vote of 48 to 44.''

The answer concluded with a denial that plaintiff had been damaged in any way or any sum whatever by reason of said publication, and that defendant had the right to publish the article complained of with the criticisms therein made, relying upon the doctrine of qualified privilege.

In addition to an instruction directing the jury to find for the defendant, J. J. Berry, the court, instructed the jury as follows:

### INSTRUCTION No. 2.

''It is admitted by the pleadings and undisputed evidence in this case that the defendant, Democrat Publishing Company, on the 15th day of March, 1916, did publish an editorial, the article read to you in evidence. The court now instructs you that the law presumes that said defendant, Democrat Publishing Company, printed and published said article maliciously or with malice, and the court further instructs you to find for the plaintiff such a sum in damages as you may believe from the evidence will reasonably compensate him for any injury to his character, if any there was, sustained by the writing and publication of said article by said defendant; or humiliation or mortification to his feelings; if any, or either so caused; for the mental anguish, if any, so caused; but not exceeding the amount claimed in the petition, to-wit, $20,000.00, and you will at least find for the plaintiff nominal damages, unless you find as in instruction 3. The court further instructs you that you may, or may not, in the exercise of your sound discretion, in addition to compensatory damages, above mentioned, assess such exemplary or punitive damages as you may think right and proper under the facts proven in this case.''

### INSTRUCTION No. 3.

"The court further instructs you that if you shall believe from the evidence that at, or just previous to the time said article was written and published of and concerning the plaintiff, by the defendant, Democrat Publishing Company, and you further believe it was founded upon the news item, published in said News-Democrat, on the 14th day of March, 1916, and you further believe that said news item was sent out by the Associated Press, undertaking to give a statement of facts, about which said editorial is written, on which complaint is made, and further believe said Associated Press news was reasonably reliable, then you may consider these facts in mitigation of the damages, if any, will find for the plaintiff."

### INSTRUCTION No. 4.

"The court instructs you, that if you believe from the evidence that the statements complained of by plaintiff were substantially true, as published, and were a reasonable and fair criticism of the acts and conduct of the plaintiff, as a Representative, and were made in good faith and without malice, then in this event you should find for the defendant; but, however, if you believe from the evidence that all the facts alleged are not true, but that some of them are true, so proven, substantially, you should consider such, as a mitigation of damages if you find for plaintiff."

### INSTRUCTION No. 5.

"The court instructs you that the word malice, as used herein, means ill will or hatred, on the part of the defendant, Democrat Publishing Company, towards plaintiff, or a reckless disregard of plaintiff's rights, by defendant."

### INSTRUCTION No. 6.

"By compensatory damages, as used herein, is meant such an amount in damages, if any there was, as will be to plaintiff a fair and reasonable equivalent of the loss or injury sustained by him as a result of said publication. By punitive damages, as used herein, is meant such damages as are given for the punishment of the defendant, Democrat Publishing Company, for any wrong or injury done or inflicted wrongfully upon the plaintiff, if any there was, by the publication of said article."

It is not seriously contended that the publication is not libelous, so we need waste no time in the discussion of that question.

We may also add that the evidence bearing on the truth of the publication was so conflicting as to make that question one for the jury.

The only other question to be determined is whether the instructions were proper. Comment on and criticism of the acts and conduct of public men are privileged if fair and reasonable and made in good faith. The right to criticise, however, does not embrace the right to make false statements of fact. Vance v. Louisville Courier-Journal Co., 95 Ky. 41, 23 S. W. 591, 25 Cyc. 403. Ordinarily where a publication is libelous *per se,* the law presumes malice and this presumption continues throughout the entire case until overcome by competent evidence. Reid v. Sun Publishing Co., 158 Ky. 727, 166 S. W. 245, If, however, the publication be qualifiedly priviledged, this relieves the publication from the presumption of malice otherwise attendant, and puts upon the plaintiff the burden of proving malice. Tanner v. Stevenson, 138 Ky. 578, 128 S. W. 878, 30 L. R. A. (N. S.) 200; McClintock v. McClure, 171 Ky. 720, 188 S. W. 867, but inasmuch as malice may be inferred from the falsity of the statements contained in the publication, the burden of proving malice may be met by showing such falsity, and where, as in this case, the evidence on the question of falsity is conflicting, the question of malice is for the jury. Evening Post Co. v. Richardson, 113 Ky. 641, 68 S. W. 665. In other words, where there is a plea of qualified privilege, the presumption of malice does not arise from the publication itself but from the falsity of the publication and the burden of showing its falsity, where there is no attack upon the plaintiff's moral character, is upon the plaintiff. Evening Post Co. v. Richardson, *supra;* Vance v. Louisville Courier-Journal Company, *supra.*

A careful examination of the instructions will show that they do not conform to the rules above announced. In instruction No. 2, the court told the jury without qualification that the law presumed that the defendant printed and published the article with malice and then gave the jury a positive direction to find for plaintiff. In other words, the burden of disproving malice was placed on the defendant and no effect whatever was given to the

plea of qualified privilege. It will also be observed, that before the jury could find for defendant under instruction No. 4, they were required to believe from the evidence "that the statements complained of by plaintiff were substantially true as published, *and were* a reasonable and fair criticism of the acts and conduct of the plaintiff as a Representative, and were made in good faith and without malice." In other words, the plea of truth and the plea of qualified privilege were submitted in such a form as to require the jury to believe that both defenses were established before finding for the defendant, whereas, each of these defenses was complete in itself and the instruction should have authorized a finding in favor of defendant, if the jury believed from the evidence that either was established. It follows that instructions 2 and 4 were erroneous.

On another trial the court, in addition to instruction 3, and other instructions defining malice and the measure of damages, will follow as closely as practicable the instructions given in the case of Vance v. Louisville Courier-Journal Company, *supra.* In other words, the court will tell the jury that malice may be presumed from the falsity of the statements contained in the publication, and that if they believe from the evidence that the publication was false and maliciously made, they will find for plaintiff; but if they believe from the evidence, that the statements contained in the publication were substantially true as published, or were a reasonable and fair criticism of the acts and conduct of the plaintiff as a Representative, and were made in good faith and without malice, they should find for the defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion.