**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 08a0173n.06**
**Filed: April 1, 2008**

**No. 06-6223**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| STEVE HODGES, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| FORD MOTOR COMPANY and JACK | ) | **O P I N I O N** |
| HALVERSON, | ) | |
| | ) | |
| Defendants-Appellees. | | |

**BEFORE:** **KENNEDY, GIBBONS, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** Steve Hodges sued Ford Motor Company and human resources manager Jack Halverson for defamation under Kentucky common law. The district court granted summary judgment to the Defendants, concluding that they had a qualified privilege to make the statements at issue. Because Kentucky law permits a jury to infer malice from the mere falsity of a statement, and a finding of malice is sufficient to defeat the qualified privilege at the summary judgment stage, we reverse.

**I**

Ford Motor employed Hodges at its truck plant in Louisville, Kentucky. Pursuant to Ford Policy C-3, employees may not: (a) exceed one supplier-paid meal per quarter, per supplier; (b) accept more than two supplier-paid entertainment or recreational events per year, per supplier; and

(c) attend a supplier-escorted event requiring an overnight stay without a special exemption from a company vice president or above. Halverson conducted an investigation into violations of Policy C-3 and requested that Hodges keep the investigation confidential. Halverson eventually concluded that Hodges had violated Policy C-3 with respect to a particular vendor (Abel Construction) and had failed to keep the investigation confidential.

On April 26, 2004, Halverson met with Hodges and Chuck Hoffman, a personnel supervisor, to terminate Hodges's employment. According to Hodges, Halverson told him at the meeting:

> [W]e find you in violation of C-3—in violation of C-3 for too many meals with a supplier in a quarter, or per quarter. We also find you in violation of C-3 policy regarding too many entertainment . . . too many outings per year per supplier. We find you in violation of going on an overnight trip without your manager's approval.
>
> . . . I asked you to keep this confidential. We find you in violation of . . . breach of trust, or confidentiality . . . for speaking to other Ford employees.
>
> We also find you in violation of speaking to vendors.
>
> * * *
>
> Based on this, we feel it's in the best interest of the company to sever all ties.
>
> * * *
>
> You're fired.

Hodges admits that he violated Policy C-3 by attending an overnight supplier event without proper approval. However, Hodges avers that the remaining statements are false.

Hodges sued the Defendants in Kentucky state court. Invoking diversity jurisdiction, the Defendants removed the action to federal district court. 28 U.S.C. § 1332. After the close of discovery, the Defendants moved for summary judgment. The district court held that Hodges had

made a prima facie case of defamation per se. *Hodges v. Ford Motor Co.*, No. 04-538, 2006 WL517609, at *3 (W.D. Ky. Mar. 1, 2006). The district court concluded, however, that Halverson made the statements in good faith and without malice and, therefore, Kentucky's qualified privilege protected the Defendants from a claim of defamation. *Id.* at *6. Accordingly, it granted summary judgment to the Defendants. *Id.*; *see also Hodges v. Ford Motor Co.*, No. 04-538, 2006 WL 1687572, at *2 (W.D. Ky. June 15, 2006) (denying Hodges's motion for reconsideration).

Hodges timely appealed.

## II

**A.      Standard of Review**

We review de novo a district court's grant of summary judgment. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 619 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 2100 (2007). Summary judgment should be granted when "the pleadings, the discovery and disclosures on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Because this matter comes to federal court under diversity jurisdiction, we apply the defamation law of the forum state, in this case Kentucky. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). In resolving an issue of state law in federal court, we must "'make [the] best prediction, even in the absence of direct state court precedent, of what the Kentucky Supreme Court would do if it were confronted with'" the same question of law. *Managed*

*Health Care Assocs., Inc. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000) (quoting *Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir. 1988)).

**B.      Defamation Under Kentucky Law**

**1.      Defamation Per Se**

To establish a prima facie case of defamation, the plaintiff must show: (a) "defamatory language"; (b) "about the plaintiff"; (c) "which is published"; and (d) "which causes injury to reputation." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)).  As the Defendants concede, Hodges has satisfied all four elements.  Halverson's statements were defamatory, they were concerning Hodges, and Halverson said them in front of another person, thereby "publishing" them for purposes of Kentucky law. *Id.* at 794.

As for the final element, the proof necessary to demonstrate an injury to reputation varies depending upon into which of two classes the defamatory statement falls: per se or per quod. *Hill v. Evans*, 258 S.W.2d 917, 918 (Ky. 1953).  If the statement is defamatory per se, "damages are presumed and the person defamed may recover without allegation or proof of special damages." *Id.* "If the word or words charged are actionable per se, the law presumes malice, and punitive damages may be recovered . . . ." *Ray v. Shemwell*, 217 S.W. 351, 353 (Ky. 1919).  Here, the district court concluded and the parties do not dispute on appeal that the statements made by Halverson were defamatory per se because they directly tended to prejudice or injure Hodges in his profession, trade,

or business. *Hodges*, 2006 WL 517609, at *3 (citing *Brewer v. Am. Nat'l Ins. Co.*, 636 F.2d 150, 154 (6th Cir. 1980)).

As Hodges has demonstrated a prima facie case of defamation, we next consider the Defendants' defenses: absolute privilege and qualified privilege.

### 2. Absolute Privilege

In Kentucky, "truth is a complete defense[,] and thus a defendant able to prove the truth of the defamatory statement at issue cannot be held liable for defamation." *Stringer*, 151 S.W.3d at 795-96 (internal citations and quotation marks omitted). Therefore, "if the evidence supports, without contradiction or room for reasonable difference of opinion, the defense that [the defamatory statements] were substantially true, it would necessarily follow that the jury should have been directed to find a verdict for the defendant, because truth is always a complete defense." *Herald Publ'g Co. v. Feltner*, 164 S.W. 370, 372 (Ky. 1914). The burden of proving truth falls upon the defendant because the falsity of defamatory words is presumed. *Stringer*, 151 S.W.3d at 796.

In order to constitute a complete defense, the truth must be as broad as the defamatory statement. "[T]he proof of the truth of a part only of a charge will not amount to a complete defense." *Register Newspaper Co. v. Stone*, 102 S.W. 800, 801 (Ky. 1907). The Defendants correctly point out that Hodges has admitted that he did not get the approval required for an overnight stay, constituting a violation of Policy C-3. However, Halverson also made statements that Hodges had too many meals with a supplier in a quarter, had too many entertainment outings per

year per supplier, and violated confidentiality requirements, the truth of which Hodges disputes.

Accordingly, the Defendants are not entitled to summary judgment based on absolute privilege.

### 3. Qualified Privilege

Kentucky also recognizes a qualified privilege against a defamation claim "where the communication is one in which the party has an interest and it is made to another having a corresponding interest . . . if [the communication is] made in good faith and without actual malice." *Baker v. Clark*, 218 S.W. 280, 285 (Ky. 1920) (internal quotation marks omitted). Whether there was a qualified privilege to make the statements is a question of law, *id.*, and Kentucky courts have recognized a qualified privilege for defamatory statements relating to the conduct of employees, *Stringer*, 151 S.W.3d at 796 & n.55 (collecting cases). The district court determined that Halverson's statements fell within the privilege, *Hodges*, 2006 WL 517609, at *3, and Hodges does not dispute this determination.

As Halverson's statements enjoy a qualified privilege, the presumption of malice raised by the defamation per se disappears, and "the burden is then on the plaintiff to prove actual malice." *Thompson v. Bridges*, 273 S.W. 529, 530-31 (Ky. 1925). "If the plaintiff sustains this burden, then the privilege is no longer existent." *Id.* at 531. The privilege is "qualified by the proviso that it not be abused, i.e. that whatever defamation may have been spoken . . . not be published with malice." *Columbia Sussex*, 627 S.W.2d at 275. For summary judgment, the question becomes whether Hodges has shown that there exists a factual question regarding malice.

Hodges argues that Halverson's statements were false and that malice can be inferred solely from such falsity. Based on its reading of Kentucky case law, the district court held that "actual malice can be inferred from falsity alone provided that the circumstances warrant such an inference." *Hodges*, 2006 WL 517609, at *5 (citing *Stringer*, 151 S.W.3d at 797). The district court then considered the evidence presented by the parties and found that Hodges had not shown that Halverson had acted recklessly, even if the other Ford Motor employees had lied to him during his investigation. *Id*. In essence, Halverson had a good-faith basis for relying upon the statements of the other employees, in the view of the district court.

While the district court's reading is in line with defamation law in some other states, *cf.* Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 9.3.1 (3d ed. 2007), it is not in accord with Kentucky law. For example, in *Thompson*, the plaintiff was a principal of a public school. Several members of the local PTA accused the principal of immorality, especially concerning his attitude towards and conduct with several of the older female students. The principal introduced evidence that the accusations were false. The Court of Appeals of Kentucky[1] first found that "a discussion of a teacher's conduct and moral fitness, if made in good faith, and without actual malice, and with reasonable or probable grounds for believing them to be true, would be privileged." *Thompson*, 273 S.W. at 530. The court then when on to hold,

> inasmuch as malice may be inferred from the falsity of the statements contained in the publication, the burden of proving malice may be met by showing such falsity, and where, as in this case, the evidence on the question of falsity is conflicting, the question of malice is for the jury.

[1]Before 1976, the Court of Appeals of Kentucky was the highest court of the Commonwealth.

*Id*. at 531 (citation omitted). In so holding, the court relied upon an earlier decision, *Evening Post Co. v. Richardson*, 68 S.W. 665, 669 (Ky. 1902), in which it decided "to adhere to the general rule of law laid down in this case,—that the question of malice in the publication should be submitted to the jury, and is to be inferred from the falsity of the publication." *See also Commercial Tribune Pub. Co. v. Haines*, 15 S.W.2d 306, 308 (Ky. 1929) ("The same authorities further hold that plaintiff will discharge that burden [of establishing malice] by proving either express malice, or that the publication was false, from which latter fact implied malice will be presumed.").

The Kentucky courts have repeatedly relied upon *Thompson* and *Evening Post*. For example, citing *Thompson*, the Kentucky Supreme Court recently held that "malice in fact," sufficient to overcome the qualified privilege, "can be inferred from the fact of . . . falsity." *Stringer*, 151 S.W.3d at 799; *see also Tucker v. Kilgore*, 388 S.W.2d 112, 114 (Ky. 1965) ("The significance of the defense of qualified or conditional privilege is that it removes the conclusive presumption of malice otherwise attaching to words that are actionable per se and thereby casts on the plaintiff a technical burden of proof in that respect. This does not require any greater degree of proof by the plaintiff, because the offensive character of the words still is sufficient by itself to support an inference of malice." (internal citations omitted)); *Democrat Publ'g Co. v. Harvey*, 205 S.W. 908, 910 (Ky. 1918) ("[I]nasmuch as malice may be inferred from the falsity of the statements contained in the publication, the burden of proving malice may be met by showing such falsity, and where, as in this case, the evidence on the question of falsity is conflicting, the question of malice is for the jury."). Moreover, prior panels of this court have recognized several times (albeit in unpublished opinions) that Kentucky law permits malice to be inferred from falsity alone. *See, e.g.*, *Roche v. Home Depot*

*U.S.A.*, 197 F. App'x 395, 401 (6th Cir. 2006) (explaining that with regard to the qualified privilege, a plaintiff "can prevail by demonstrating the actual falsity of Home Depot's statements, or Home Depot's reckless disregard for their truth or falsity"); *Brewer v. Am. Nat'l Ins. Co.*, No. 82-5039, 1983 U.S. App. LEXIS 13119, at *18 (6th Cir. Apr. 27, 1983) ("[I]t is clear that though a defense of privilege exists absent the presence of malice, malice may be established directly or may be inferred from the falsity of the statement itself."). At least one treatise commentator has taken notice of Kentucky's apparently singular approach to defamation: "Although its law is not entirely clear, Kentucky appears to have adopted the unique rule that the offensive character of the words, or the fact of falsity, are themselves sufficient to support an inference of 'malice' for . . . purposes [of the qualified (conditional) privilege]." *Sack on Defamation* § 9.3.1, at 9-42 (footnotes omitted).

The Defendants ask us to read *Stringer* and other Kentucky decisions narrowly, claiming that malice only can be inferred from falsity when there is no factual basis to support the defamatory statement. However, this interpretation is contrary to the *Stringer* court's own characterization of qualified privilege as placing only a "technical burden of proof regarding malice upon the plaintiff" that "does not require any greater degree of proof by the plaintiff." *Stringer*, 151 S.W.3d at 797 (internal quotation marks omitted). *Stringer* explained that "the offensive character of the words . . . is *sufficient by itself* to support an inference of malice," without any requirement that there be an absence of evidence to support the statement. *Id.* (citation omitted, emphasis added). Furthermore, prior cases applying qualified privilege impose no such requirement. *See, e.g.*, *Democrat Publ'g*, 205 S.W. at 910; *Evening Post*, 68 S.W. at 667-68 (allowing the jury to infer malice from falsity even though the defendant claimed having received the information from "a journalist of great experience,

prudence, and accuracy" and having "in good faith believed each statement . . . to be true"). The qualified privilege shifts to the plaintiff "the onus of proving malice in fact, but not of proving it by extrinsic evidence only." *Evening Post*, 68 S.W. at 668 (citation omitted). "He has still the right to require that the alleged libel itself shall be submitted to the jury, that they may judge whether there is evidence of malice on the face of it." *Id.* (citation omitted).

The Defendants also argue that allowing malice to be inferred from falsity would impose strict liability for defamatory statements otherwise protected by privilege. However, under a strict liability regime, falsity and malice are *presumed* if the plaintiff makes out a prima facie case of defamation per se. *See Stringer*, 151 S.W.3d at 794, 796. As here, when the plaintiff makes a prima facie case but the defendant enjoys a qualified privilege, the plaintiff must prove (not presume) malice either by extrinsic evidence or by possible inference from the falsity of the statement, in which case the plaintiff bears the burden of actually proving falsity. *Thompson*, 273 S.W. at 531. Proving a statement is false does not create a necessary inference of malice, just a possible inference that a factfinder can choose to accept or reject. *See Democrat Publ'g*, 205 S.W. at 911 ("[T]he court will tell the jury that malice may be presumed from the falsity of the statements contained in the publication; and that, if they believe from the evidence that the publication was false *and* maliciously made, they will find for plaintiff; but if they believe from the evidence that the statements contained in the publication were substantially true as published, *or* were a reasonable and fair criticism of the acts and conduct of the plaintiff . . ., and were made in good faith and without malice, they should find for the defendant." (emphasis added)).

Because the factfinder can infer malice solely from falsity, the effect of qualified privilege

is to shift the burden from the defendant to prove truth to the plaintiff to prove falsity. Instead of the

defendant having to prove the truth of the defamatory statement at trial (thereby establishing an

absolute privilege), the burden is placed on the plaintiff to prove the falsity of the statement (to rebut

the defendant's qualified privilege). Thus, while the qualified privilege may be largely toothless at

summary judgment, the privilege still has some bite at trial.[2]

---

[2]In the dissent's view, Kentucky's defamation law involves a five-part, burden-shifting analysis when a defendant relies on the qualified privilege. The plaintiff has the initial burden (1) to plead defamation per se; (2) the burden then shifts to the defendant to allege a qualified privilege; (3) the burden shifts back to the plaintiff to provide some evidence of malice, e.g., the communication is false; (4) the burden shifts again to the defendant to provide evidence of its reasonable investigation and good faith reliance; and (finally) (5) the burden shifts once again to the plaintiff to show greater evidence of malice.

There are several problems with this approach. First, we are not aware of any Kentucky decision setting forth this type of analysis in explicit terms for purposes of summary judgment. Second, courts cannot weigh evidence at the summary-judgment stage. The dissent's final proposed burden—requiring the plaintiff to show *greater* evidence of malice—treads dangerously close to, and likely crosses over, the line of impermissible evidence weighing at this stage of the litigation.

Finally, as noted *supra*, several Kentucky decisions, specifically relied upon by the Kentucky Supreme Court in *Stringer*, have held that once the plaintiff has provided sufficient evidence of falsity, the question of whether the plaintiff has met his or her "technical burden of proof" is one for the jury, not the judge. 151 S.W.3d at 797. Specifically, in crafting its burden-shifting test, the dissent quotes approvingly from *Thompson*: "[W]hile the presumption of malice will ordinarily arise from the publication of the slanderous language, when there is a qualified privilege the presumption of malice arises after the plaintiff proves the statement false 'and, having done this, [the plaintiff] has destroyed, *at least until it be restored by other proof*, the defense of privilege.'" Dis. at 2 (quoting *Thompson*, 273 S.W. at 531 (emphasis added by dissent)). The dissent apparently takes the emphasized phrase to mean that the defendant can restore the qualified privilege at summary judgment by showing good faith, lack of actual malice, and reasonable or probable grounds for believing the statements to be true. Yet, the *Thompson* decision relies on *Democrat Publishing* for the proposition that, "inasmuch as malice may be inferred from the falsity of the statements contained in the publication, the burden of proving malice may be met by showing such falsity, and where, as in this case, the evidence on the question of falsity is conflicting, the question of malice is for the jury." 273 S.W. at 531 (quoting *Democrat Publ'g*, 205 S.W. at 910). Thus, the better

Based on our reading of Kentucky law, we conclude that the district court erred. Hodges testified that he paid his own way to several of the events or that a vendor other than Abel Construction paid his way. He also testified that when he paid, he paid in cash, and did not have receipts. It is undisputed that the paperwork originally submitted by Abel Construction suggested that Hodges did not violate Ford Motor's vendor policy, but only when Halverson asked Abel Construction's upper management to re-review the matter did the vendor provide revised reports suggesting Hodges did violate the policy. While the weight of the evidence might appear to favor the Defendants, it cannot be said that Hodges's version is wholly implausible. Where the evidence on the question of falsity is conflicting, the questions of whether the statements were false and whether those false statements result in an inference of malice are for the factfinder to decide under Kentucky law.

### III

For the reasons set forth above, we REVERSE and REMAND the case to the district court for proceedings consistent with this opinion.

---

reading of *Thompson*'s "until it be restored by other proof" is that the phrase refers to proof to be weighed by the jury. A showing of falsity or of a question of falsity destroys the qualified privilege entirely for purposes of summary judgment, but the defendant can resuscitate the privilege at trial.

**Kennedy, Circuit Judge, dissenting**.

While I generally agree with the majority's analysis of Kentucky defamation law, I believe it stops short after determining that Mr. Hodges allegation of falsity is enough to continue to trial. I believe that Kentucky defamation law operates in a case such as this as follows: (1) a suit is pleaded alleging defamation per se; (2) the defendant alleges qualified privilege, which is established by the circumstances of the communication, and once established shifts the burden of proving malice to the plaintiff; (3) the plaintiff alleges the falsity of the communication, which permits an inference of malice and therefore provides some evidence of malice; (4) the defendant provides evidence regarding its reasonable investigation and good faith belief regarding the communication; and finally, the point at which the majority and I diverge, (5) the plaintiff must now, and Mr. Hodges has not, present greater evidence of malice to show that the defendant did not in fact conduct a reasonable investigation or did not speak in good faith. At step five, the plaintiff no longer can carry his burden of proof, and therefore continue to trial, based on the mere allegation of falsity. Because I believe this to be the correct view of Kentucky defamation law, and because I believe Mr. Hodges has not met his burden under step five, I respectfully dissent.

I. Kentucky Defamation Law Regarding Falsity in Qualified Privilege Cases

The majority's holding, that an allegation of falsity will always be enough to permit the plaintiff to proceed to trial, is unsupported by Kentucky case law. The Kentucky Supreme Court's most recent pronouncement of defamation, *Stringer v. Wal-Mart Stores Inc.*, 151 S.W.3d 781 (Ky. 2004), provides support for granting summary judgment to the defendants. *Stringer* involved a store manager making oral statements at a store-wide meeting and in public areas. 151 S.W.3d at 792.

Although hesitant to do so, the court treated the statements as protected by qualified privilege. *Id.* at 798. To overcome the privilege, the court stated that the plaintiff must prove malice, and proof of malice " 'requires a showing of knowledge of falsity of the defamatory statement or reckless disregard of its truth or falsity.' " *Id.* (quoting *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 885 (Ky. 1981)). The court found, and Wal-Mart introduced no contrary proof, that the statement made was false, and that the manager had "no factual basis whatsoever" for making the statement. *Id.* at 798. Falsity in this case sufficed to prove malice, because " '[m]alice *can be inferred* from the fact of . . . falsity.' " *Id.* (quoting *Thompson v. Bridges*, 273 S.W. 529, 531 (Ky. 1925) (emphasis added)). The question is the circumstances under which such an inference of malice arises, as well as the weight to be given to the inference.

The cases positively cited to and relied upon by *Stringer* provide greater clarity regarding when such an inference arises and when that inference amounts to enough proof to withstand summary judgment. *Stringer* cited *Thompson v. Bridges*, 273 S.W. 529 (Ky. 1925) for permitting an inference of malice from falsity. The plaintiff in *Thompson* "introduced a lot of proof to show that the statements so made were false and without foundation in fact. On this showing, [plaintiff] insist[ed] that he was entitled to have his case submitted to the jury *at least in the absence of any contrary proof.*" 273 S.W. at 530 (emphasis added). The court held that while the presumption of malice will ordinarily arise from the publication of the slanderous language, when there is a qualified privilege the presumption of malice arises after the plaintiff proves the statement false "and, having done this, [the plaintiff] has destroyed, *at least until it be restored by other proof*, the defense of privilege." *Id.* at 531 (emphasis added). The *Thompson* court stated that the statements made would

be privileged, i.e. the defense would be restored, if the defendant proves that the communications were "made in good faith, and without actual malice, and with reasonable or probable grounds for believing them to be true." *Id.* at 530. This means that the plaintiff can carry its burden of proving that the defendant either lacked "good faith" or had no "reasonable or probable grounds for believing" the truth of his statements (i.e. acted with malice) by showing that the statements were in fact false, absent evidence presented by the defendant that there were reasonable grounds to believe the truth of the statements and good faith in making the statements. *Id.* at 530-31. This holding is consistent with similar cases cited in *Stringer*. *See, e.g.*, *Tucker v. Kilgore*, 388 S.W.2d 112, 114, 116 (Ky. 1965) (holding that the "offensive character" of the words spoken to be sufficient to infer malice because the defendant did not have personal knowledge of the facts communicated, and did not exercise reasonable care in determining the truth prior to communication); *Tanner v. Stevenson*, 128 S.W. 878 (Ky. 1910) ("In ordinary cases under the general issue the plaintiff will not be permitted to prove the falsity of the charges made by the defendant either to show malice or to enhance damages, for his innocence is presumed, unless the defendant seeks to protect himself under color of the circumstances and occasion of writing or speaking the words, in which case it seems that evidence that the charge was false *and that the defendant knew it to be so* is admissible to rebut the defense." (quoting GREENLEAF ON EVIDENCE, vol. 2, § 419) (emphasis added)).

While the majority disagrees with my reading of the quoted language from *Thompson* regarding the plaintiff's burden of proof, *see* Maj. Op. at 11 n.2, *Baskett v. Crossfield*, 228 S.W. 673 (Ky. 1920), another case approvingly cited in *Stringer*, *e.g.*, *Stringer*, 151 S.W.3d at 797 n.56, provides an excellent example of a case where falsity alone was not enough to withstand a directed

verdict when the defendant had entered proof of good faith and reasonable investigation. In that

case, a university president expelled a pupil and wrote two explanatory letters to the pupil's father,

which included the fact that the pupil had been exposing himself in front of a window and was seen

by female pedestrians. 228 S.W. 673-75. The court there noted that there was "such conflict" in

evidence regarding whether or not the pupil had taken such action that the statement's truth or falsity

was a question for the jury. *Id.* at 675. Despite the fact that the statements could be false, the court

still held them privileged and upheld the directed verdict for the defendant. It noted that the

president had "done only what his duty required of him," that his words were "gentl[e] and rather

apologetic[]," and that the "letters were written in the utmost good faith and for the good of the

father." *Id.* at 676. The court further stated that "there [was] a total absence of evidence tending to

show malice on the part of President Crossfield towards young Baskett or his father." *Id.* While the

communication may have stated a false fact, it was not communicated out of malice or without

reasonable investigation, and therefore held privileged as a matter of law.[3] *See id.*

---

[3] I believe that this case is the clearest of all regarding the nature of evidence required to overcome a qualified privilege when a defendant has entered evidence of good faith and reasonable investigation. The majority's conclusion, that evidence of falsity is always enough to permit a jury verdict for the plaintiff, completely fails to explain the result in *Baskett*. The jury had found for the plaintiff, and yet the court overturned the jury verdict and directed a verdict for the defendant because, despite the fact that the jury could have found the statements false, 228 S.W. at 675, falsity alone was not enough to overcome the defendant's qualified privilege when the defendant had entered proof of good faith and reasonable investigation, 228 S.W. at 676. The only way to reconcile this case with the majority's analysis is to hold that despite the fact a plaintiff can proceed to trial solely on evidence of falsity and despite the fact that the defendant has entered unrebutted evidence of good faith, as the majority finds, the jury is not permitted to render a verdict for the plaintiff absent greater proof, as Kentucky's highest court held in *Baskett*. That this reading of the law is unsupported is obvious on its face; it would be incongruous to hold that a plaintiff has enough evidence to proceed to trial despite the fact that the plaintiff does not have enough evidence for the

*Stewart v. Williams*, 218 S.W.2d 948 (Ky. 1949), again a case positively noted in *Stringer*, *e.g.*, *Stringer*, 151 S.W.3d at 797 n.58, also provides a fine example of falsity not being enough. The defendant's statement in *Stewart* was that the plaintiff had gotten drunk on two occasions. 218 S.W.2d at 949. The court stated, however, that the false nature of the charge would not be enough; "[i]f the privilege is qualified, false and defamatory statements *will not* give rise to a cause of action *unless* maliciously uttered." *Id.* at 950 (emphasis added). There the court held that there was no evidence of malice, despite the fact that plaintiff alleged falsity, because the plaintiff had caused the inquiry to be put to the defendant which led to the utterance, and because the persons present during the utterance "were proper persons to be called into consultation concerning the subject matter." *Id.* at 708.

Indeed, the Kentucky Supreme Court has held that testimony regarding the falsity of the underlying facts is irrelevant where the defendant is not alleging a defense of truth but instead claims privilege and enters evidence that he spoke based upon evidence a reasonably prudent person would believe and that he spoke in good faith. *Edwards v. Kevil*, 118 S.W. 273, 275 (Ky. 1909). The court held that even though the plaintiff could prove the statements false, such proof was irrelevant to contradict defendant's proof that he had a reasonable belief and spoke in good faith. *Id.*; *see Stewart v. Hall*, 83 Ky. 375 (1885) ("The law only requires, however, good faith, and not infallible judgment . . . ."). Falsity of the statement, then, merely provides enough evidence of lack of probable cause in speaking because the jury is allowed to infer malice from falsity, but when defendant shows he

---

jury to render a verdict for the plaintiff.

had probable cause, mere falsity is not enough to withstand summary judgment. *See Browning v. Commonwealth*, 76 S.W. 19, 20 (Ky. 1903) ("Actual malice can rarely be proven, and the only chance for redress for the plaintiff is ordinarily the want of probable cause in publication. It therefore follows that the defendant must show the information on which he relies in the publication to show probable cause. In this case the defendant has not attempted to show any facts which reasonably induced him to believe [the truth of his assertion]. And it is well-settled law that, if the matter charged as libelous be false, and the publication malicious, it cannot be privileged."); *accord Ranson v. West*, 101 S.W. 885, 886 (Ky. 1907) ("No action will lie for false statements contained in [a privileged communication], unless it be shown that it was both false and malicious.").

That my reading of *Stringer* is accurate is borne out by later Kentucky court of appeals' cases applying it. The court of appeals held in *Boggs v. Wal-Mart Stores, Inc.*, No. 2005-CA-000329-MR, 2006 WL 1045413 (Ky. Ct. App. Apr. 21, 2006) that if words are protected by the qualified privilege, then the plaintiff must "prove that the defamatory statement was published with actual malice, which 'requires a showing of knowledge of falsity of the defamatory statement or reckless disregard of its truth or falsity[.]' " *Boggs*, 2006 WL 1045413, at *3 (quoting *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 799 (Ky. 2004) (quoting *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 885 (Ky. 1981))). Applying *Stringer* in *Vorobiev v. Hersh*, No. 2005-CA-002522-MR, 2007 WL 706816 (Ky. Ct. App. Mar. 9, 2007), the court of appeals upheld a grant of summary judgment for the defendant on the basis of qualified privilege, stating that:

> Neither did the[ plaintiffs] succeed in establishing "actual malice" on the part of [the
> defendant] by showing that he acted with knowledge that his statements concerning

[plaintiffs] were false or with reckless disregard of their truth or falsity. . . . [The defendant]'s response was restrained in light of the accusation [leveled at him by the plaintiffs]. The only reasonable interpretation of the intent of [the defendant]'s e-mail is precisely what it purports to be–a request for an investigation regarding the students' allegations about him . . . . On the basis of the undisputed facts and the unambiguous content of [the defendant]'s e-mail, we [uphold the grant of summary judgment].

2007 WL 706816, at *3. Additionally, in *Ashland Hosp. Corp. v. Calor*, __ S.W.3d __, No. 2006-CA-000395-MR, 2007 WL 1574606 (Ky. Ct. App. June 1, 2007), the court of appeals similarly upheld a grant of summary judgment because "[r]eview of the record disclose[d] nothing from which one might conclude that appellants' communications [] were motivated by malice or were exercised other than 'in a reasonable manner and for a proper purpose.' Nor is there any suggestion that the communications [] . . . were published in a reckless or excessive manner." *Calor*, 2007 WL 1574606, at *3. All of these cases, just like some of the older cases discussed earlier, ended in summary judgment for the defendant based on qualified privilege despite the fact that the plaintiff had alleged falsity. If the majority's understanding of Kentucky defamation law was correct, however, no case would ever end in summary judgment based on qualified privilege when there is a genuine issue of material fact regarding falsity.

## II. Mr. Hodges' Failure to Prove Malice

Mr. Hodges has failed to carry his burden of proving malice to overcome the defendants' qualified privilege. First, this case is not one where malice would be presumed from the fact of

falsity because the defendants have engaged in a thorough investigation, which gave them probable

cause to believe the truth of Mr. Halverson's statements, and because there is no evidence of bad

faith.[4]  Mr. Halverson is not the manager in *Stringer*; he had a factual foundation for speaking the

---

[4]The facts surrounding Mr. Halverson's investigation are as follows: first, Mr. Halverson contacted Mike Gies, Abel Construction's on-site representative at the Ford Kentucky Truck Plant (KTP), and asked him for Abel's expense records detailing perquisites provided to KTP employees. J.A. at 36, 68.  Abel Construction was required to keep such records so that Ford could conduct audits to ensure that its employees were not violating Policy C-3, which limited the amount of meals and entertainment an employee could accept, as well as outright banned things like overnight trips taken without approval of a vice president or higher.  J.A. at 40-42.  When Amy Snider, the area manager, found out about a meal the records reflected that she attended when she was in fact not there, Ms. Snider informed Mr. Halverson of the discrepancy.  J.A. at 36, 62.  Mr. Halverson then contacted Abel Construction headquarters and asked for the expense records to be provided again, but this time without the participation of Mr. Gies.  J.A. at 36, 70.  Abel Construction provided Mr. Halverson with the company's expense records detailing the amount, the date, and the recipient of things such as meals.  J.A. at 60-61.  The company also provided Mr. Gies's credit card bills and expense reports.  J.A. at 47-58.  Mr. Halverson then requested further clarification on ambiguous entries, because some meal expenses did not indicate who the recipients were, and also asked the company to ensure that the records were completely accurate.  J.A. at 59.  Abel Construction provided updated information to Mr. Halverson a couple more times as it learned more about the expenses.  J.A. at 63, 65.

Mr. Halverson had reason to ask Abel Construction for such detailed records. Cheryl Collins, an engineering superintendent, told him that she saw Mr. Gies, Mr. Hodges, and Rick Morgan reviewing the initial list Mr. Gies provided to ensure that the records did not reveal any C-3 violations.  J.A. at 64.  Additionally, Ms. Snider not only told Mr. Halverson that she was not at a dinner that the records stated she attended, she also told him that Mr. Hodges had doctored the records to make it appear as if she was there when in fact Mr. Hodges was there.  J.A. at 62.  She further stated that Mr. Hodges had asked her to lie about the matter.  *Id.*

Mr. Halverson then had reason to believe that Mr. Hodges had committed three policy C-3 violations as well as broken his promise to keep the audit confidential.  The records provided by Abel Construction as well as the statements of Ms. Collins and Ms. Snider provided more than enough reason to hold such a belief. During the course of the investigation, Mr. Halverson sat down with Mr. Hodges twice and asked him whether or not he was treated to things such as dinner and golf by Abel Construction on specific dates, in specific places.  J.A. at 75, 119-21.  Mr. Hodges said that while he did attend some of the listed events, he did not attend all of those about which Mr. Halverson was inquiring.  J.A. at 134-36.  Mr. Halverson disbelieved Mr. Hodges, and terminated him for the violations.  J.A. at 107-08.

allegedly false statement. *Cf. Stringer*, 151 S.W.3d at 798. Despite Mr. Hodges proving the

statement false (as we must assume on summary judgment) and thereby defeating the privilege, Mr.

Halverson and Ford have "restored [the defense of privilege] by other proof," proof that Mr. Hodges

did not contradict. *See Thompson v. Bridges*, 273 S.W. 529, 530-31 (Ky. 1925). While the plaintiff's

proof that the statement is false raises some specter of malicious intent on the part of the defendant,

*see Tucker v. Kilgore*, 388 S.W.2d 112, 114 (Ky. 1965), it certainly does not constitute more than

a scintilla of evidence to withstand summary judgment in this case because there is overwhelming

proof of reasonable investigation by Mr. Halverson and no proof of malicious intent. *Cf. Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[The plaintiff cannot] rest on his allegations . .

. to get to a jury without 'any significant probative evidence tending to support the complaint.' "

(quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968))); *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 157-60 (1970) (explaining that when the circumstances alleged give rise

---

Mr. Halverson was entitled to rely on the information he had obtained from the different and ostensibly reliable sources when *the only* evidence supporting Mr. Hodges version of the events was his own statements. This is particularly true because Mr. Hodges admits violating the prohibition on overnight trips. While Mr. Hodges disagreed with Ms. Snider's statements to Mr. Halverson, he could not provide any reason for her to lie. J.A. at 156. Additionally, Mr. Hodges disagreed with Ms. Collins but said that the two had "got[ten] along fine" and that he knew of no reason for her to lie. J.A. at 142, 152. Mr. Halverson had also obtained the impeaching records reflecting the violations directly from Abel Construction. Mr. Hodges now alleges in his brief that the updated records from by Abel were fabricated because Mr. "Halverson . . . basically ordered Abel to provide 'corrected' records that purported to show that Hodges had [breached policy C-3]." Pl.'s Br. at 41. While such a bare allegation unsupported by even a shred of evidence may be fine for a pleading before discovery, it does not provide the specific evidence that the plaintiff needs to prove that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[The plaintiff cannot] rest on his allegations . . . to get a jury without 'any significant probative evidence tending to support the complaint.' " (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968))).

to an inference of facts which plaintiff needs to meet the necessary elements, such inference will not be enough to withstand summary judgment when defendant comes forward to fill in the "unexplained gaps" rebutting the inference and plaintiff does not come forward with "direct evidence" to support the "specific facts.").

Malice, however, can also be proved by the context of the communication. The Kentucky Supreme Court has discussed context as used to overcome qualified privilege as follows:

There must be some evidence beyond the mere fact of publication. It may be intrinsic from the style and tone of the communication. If it contains expressions which exceed the limits of privilege, such expressions are evidence of malice. Or it may be extrinsic, as by proof of actual malice, or that the statement was knowingly false, or that it was made without probable cause, or in any way that fairly and reasonably tends to overcome the prima facie presumption of protection under the privilege.

*Browning*, 76 S.W. at 20; *see Cole v. Wilson*, 57 Ky. (18 B. Mon.) 212 (1857) ("But if [the statement] were accompanied by comments of a slanderous nature, not necessary to the attainment of this object, referring to an individual concerning whom no information was expected or desired, and setting forth facts which were foreign to the avowed object with which it was written, . . . still this part [could prove malice]."); *Faris v. Starke*, 39 Ky. (9 Dana) 128 (Ky. 1839) (discussing the secrecy with which the communication was made as evidence relevant to determining malice).

The context does not support a finding of malice in this case. The extensive investigation conducted by Mr. Halverson is discussed in footnote one above. Additionally, the words chosen were not the kind from which malice is inferred. Mr. Halverson merely laid out the general reasons

for Mr. Hodges' termination. J.A. at 13. Mr. Halverson did not use inflammatory language, did not embellish, did not verbally reprimand, did not taunt, nor did he use any other type of language that one would expect someone to use when motivated by malice to speak certain words. The information given to Mr. Hodges was the bare minimum of what would be expected, which does not suggest malice.

Mr. Hoffman's presence, which is key to Mr. Hodge's case because defamation requires publication, during the utterance also does not suggest malice. There is no evidence suggesting that Mr. Hoffman was someone that Mr. Hodges knew particularly well or someone in front of whom Mr. Hodges would be particularly embarrassed; Mr. Hodges said he did not have any kind of personal or professional difficulties with Mr. Hoffman. J.A. at 177. Additionally, Mr. Hoffman is the salaried personnel supervisor, and according to his sworn affidavit, he would have to be told of the reasons for Mr. Hodges' discharge so as to ensure that all proper procedures were followed.[5] J.A. at 79. Mr. Hoffman also provided Mr. Hodges information during this meeting regarding what to

---

[5]Mr. Hodges alleges that Ford has a policy requiring that anyone present during a termination must be at least one level above the employee being terminated. J.A. at 76. He further alleges that Mr. Hoffman was lateral to him in responsibility, and therefore should not have been present when Mr. Hodges was being fired. *Id.* Mr. Hoffman disputes both factual assertions, and further asserts that Mr. Hodges has no personal knowledge of human resources procedures because he has never worked in that department. J.A. at 79. This fact is not, however, material. Even if that was Ford's policy, it was one that Mr. Hodges termed a "should," not a "must." J.A. at 76. Also, the context analysis does not change. Mr. Hodges did not allege that the words were particularly hurtful because Mr. Hoffman was present. There is no evidence that having Mr. Hoffman there was part of a scheme to hurt Mr. Hodges with the words used to terminate him. Mr. Hoffman's presence, therefore, does not change the context enough to provide an inference of malice.

do with Ford property and how the peer review process worked. J.A. at 81, 110, 112. Additionally, the utterance occurred in a private office with the door closed. J.A. 38, 79, 105.

The last bit of proof put forward by Mr. Hodges, aside from falsity and context, is that Mr. Halverson held a grudge against him, and therefore spoke from malice. Mr. Hodges alleges that Mr. Halverson had a "desire to get [Mr.] Hodges out of Ford." Pl.'s Br. at 11. He asserts that this desire arose from an incident about a year prior to Mr. Hodges' termination. Mr. Halverson had determined that Mr. Hodges' time was improperly coded for the Ford payment system, and that this improper coding was resulting in Mr. Hodges getting too much overtime pay. J.A. at 39, 170-71. Mr. Hodges told Mr. Halverson that he had changed the coding so as to save Ford money, and that he had the approval of his supervisor. J.A. at 168-69. Mr. Hodges claims that Mr. Halverson responded that Mr. Hodges was previously told to code his time in another manner, and that if Mr. Halverson "could prove [that Mr. Hodges had been so told], th[eir] conversation would have a much different outcome, so [Mr. Hodges] better watch [him]self." J.A. at 169-70. Mr. Hodges claims the import of this warning was that Mr. Halverson wanted to fire Mr. Hodges.

Even accepting this version of events as true, as we are required to do for the nonmovant, such a fact does not prove malice. An allegation of general hatred will not do when trying to prove the malice necessary for a defamation claim. *See, e.g.*, *Baskett v. Crossfield*, 228 S.W. 673, 675 (Ky. 1920) (holding that *the publication* must be inspired by malice). Mr. Hodges would have to allege and prove that Mr. Halverson uttered those specific, false words in front of Mr. Hoffman because he wanted to spite or otherwise harm Mr. Hodges. While Mr. Hodges alleges Mr. Halverson dislikes him, he does not allege and he has no proof that Mr. Halverson set up the scenario of termination

and uttered those words out of hatred or ill will. Mr. Hodges version of the facts only presents a scenario that occurred more than a year prior to his termination with no other interaction between the two until Mr. Hodges' termination, a gap which greatly undermines his claim that this previous incident proves Mr. Halverson's malice. Additionally, he only alleges Mr. Halverson made a vague statement that Mr. Hodges should "watch [him]self." This vague statement does not prove that Mr. Halverson ever had malice toward Mr. Hodges, or that he would have malice lasting over a year and for some unknown reason determine it was then time to make up fabrications to terminate Mr. Hodges and at the same time embarrass Mr. Hodges by uttering the fabricated reasons for discharge in front of Mr. Hoffman, whose presence is the only reason for finding that the utterances were "published," which is required for defamation. This is particularly the case when all of the objective evidence uncovered in Mr. Halverson's investigation supports Mr. Halverson's statements about Mr. Hodges.

Because I believe that a careful analysis of Kentucky defamation law reveals that Mr. Hodges did not meet his burden of proof of establishing malice on the part of Mr. Halverson, and that the defendants are therefore entitled to summary judgment, I respectfully dissent.